**BURLINGTON RESOURCES OIL & GAS COMPANY, Appellee,**

v.

**COX et al., Appellants.**

[Cite as *Burlington Resources Oil & Gas Co. v. Cox* (1999), 133 Ohio App.3d 543.]

Court of Appeals of Ohio,
Fourth District, Jackson County.

No. 98CA834.

Decided April 26, 1999.

*Donald A. Cox,* for appellants.

*Baker & Hostetler L.L.P.* and *David C. Levine,* for appellee.

KLINE, Presiding Judge.

Successor lessors Billy J. Cox, Sr., and Cheryl A. Cox appeal a Jackson County Court of Common Pleas' judgment finding that successor lessee Burlington Resources Oil & Gas Company ("Burlington") did not breach its lease with the Coxes by timely mailing the rental check to the original lessors instead of the Coxes. On appeal, the Coxes argue that Burlington had the burden of discovering that they were the successor lessors because of its vast resources. We disagree, and find that Burlington exercised good faith and substantially performed all of its obligations under the lease. Accordingly, we affirm the judgment of the trial court.

I

On April 22, 1993, the Dalton and Hanna Company entered into a ten-year oil and gas lease with Herman and Ruth Grow, owners of forty acres of real estate in Jackson County. The lease provided that "[t]he rights of either party hereunder may be assigned in whole or in part and the provisions hereof shall extend to the

heirs[,] successors[,] or assigns." The Dalton and Hanna Company assigned its interest in the lease to Burlington, the successor lessee. On August 7, 1996, Billy J. Cox, Sr., and Cheryl A. Cox bought the forty acres from the Grows and became the successor lessors.

The lease provided that the lessee either had to drill a well on the forty acres or pay a delayed rental fee of eighty dollars before April 22 of each year. The lease provided that the lessee could mail or tender the rental payment in person to the lessors. If the lessee failed to either drill or pay the delayed rental fee during any year, then the lease released each party from all further obligations. The lessee timely paid the eighty dollars to the Grows in 1994 through 1997. The 1997 payment reached the Grows because the post office forwarded the payment to their new address. The Grows cashed the check even though they no longer owned the land.

On March 23, 1998, Burlington, as the lessee, mailed the eighty dollar rental check to the Grows at the address provided in the lease, the same address it used in 1997. However, the post office returned the check to Burlington because the Grows' mail forwarding order had expired. When Burlington attempted to locate the Grows, it discovered that the Coxes had bought the leased property.

On June 30, 1998, Burlington mailed a letter, along with a copy of the lease, to Mr. Cox advising him of its leasehold interest in the forty acres. The letter requested that the Coxes sign a ratification and rental division order ("ratification") to ensure that they were entitled to the eighty dollar lease payment. Burlington stated in the letter that it would remit the April 1998 rental payment upon receipt of the ratification.

On July 29, 1998, the Coxes mailed a notice of forfeiture to Burlington pursuant to R.C. 5301.332. The notice claimed that Burlington had forfeited the lease by failing to pay the eighty dollar rental payment to the Coxes before April 22, 1998. The notice further provided that the Coxes intended to file for the record, pursuant to R.C. 5301.332, an affidavit of forfeiture with the Jackson County Recorder if Burlington did not have the lease released of record within thirty days.

On August 18, 1998, Burlington filed a verified complaint in the trial court seeking (1) a temporary restraining order, (2) temporary and permanent injunctive relief, and (3) damages. Burlington stated, *inter alia,* that the lease allowed Burlington to conduct seismic testing for oil and gas, but that the Coxes refused to allow Burlington's agents onto the property. Burlington maintained that the Coxes' refusal breached the terms of the lease.

Eventually, the parties stipulated to the facts and agreed that the only issue the trial court needed to decide was whether the lease was valid. The trial court found the lease valid.

The Coxes appeal and raise the following assignment of error:

".The trial court erred in determining that [Burlington's] lease was valid."

## II

The issue before the court is whether a lessee breaches a lease when (1) the lessee timely mails a rental check to prior lessors because new land owners never notify the lessee that they are the successor lessors and (2) the lease allows for successor lessors, but is silent on notification.

■ The Coxes make the same arguments in this court that they made in the trial court. They maintain that Burlington breached the plain and unambiguous terms of the lease by failing to pay or tender the rental fee by April 22. They assert that Burlington should have the burden of determining the identity of the current lessors, because Burlington is a large company with many resources. Burlington insists that it did not breach any of the lease terms because, at a minimum, it substantially performed all of its obligations under the lease. Because the facts are not in dispute, we must interpret the lease contract to determine as a matter of law what obligations Burlington had under the lease and whether Burlington substantially satisfied those obligations. *Luntz v. Stern* (1939), 135 Ohio St. 225, 14 O.O. 62, 20 N.E.2d 241, paragraph five of the syllabus. See *Graham v. Drydock Coal Co.* (1996), 76 Ohio St.3d 311, 313, 667 N.E.2d 949, 951–952, citing *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146.

■ "Contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. E. Ohio Gas Company* (1974), 38 Ohio St.2d 244, 67 O.O.2d 321, 313 N.E.2d 374, paragraph one of the syllabus. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. A court must construe a contract against the party who drew it. *Drydock, supra,* 76 Ohio St.3d at 314, 667 N.E.2d at 952–953, citing *Cent. Realty Co. v. Clutter* (1980), 62 Ohio St.2d 411, 16 O.O.3d 441, 406 N.E.2d 515.

■ The parties to a contract are required to use good faith to fill the gap of a silent contract. *Carter v. Warner Interior, Inc.* (Nov. 6, 1997), Cuyahoga App. No. 71797, unreported, 1997 WL 691179, citing *Kham & Nate's Shoes No. 2, Inc.*

*v. First Bank of Whiting* (C.A.7, 1990), 908 F.2d 1351, 1357, and *Metro. Life Ins. Co. v. Triskett Illinois, Inc.* (1994), 97 Ohio App.3d 228, 238, 646 N.E.2d 528, 534. "Good faith is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Ed Schory & Sons, Inc. v. Soc. Natl. Bank* (1996), 75 Ohio St.3d 433, 443–444, 662 N.E.2d 1074, 1082–1083.

The Coxes argue that Burlington should fill the gap in this contract by using its vast resources each year to identify the lessors or successor lessors. The Coxes do not say how Burlington should accomplish this task. Apparently, they want us to impose a duty of good faith upon Burlington to check the records at the Jackson County Recorder's Office each year before it sends out the eighty dollar rental payment. Under the terms the Coxes seek to imply, if the contract remained in force for ten years, then Burlington would have the duty to check the record ten times. After carefully reviewing the terms of the lease, we do not think that the original parties intended to impose this yearly burden upon the lessee.

A party does not breach a contract when that party substantially performs the terms of the contract. *Ohio Farmers' Ins. Co. v. Cochran* (1922), 104 Ohio St. 427, 135 N.E. 537, paragraph two of the syllabus. Nominal, trifling, or technical departures from the terms of a contract are not sufficient to breach it. *Id.* A court should confine the application of the doctrine of substantial performance to cases where the party has made a honest or good faith effort to perform the terms of the contract. *Ashley v. Henahan* (1897), 56 Ohio St. 559, 47 N.E. 573, paragraph one of the syllabus.

Here, the lease provides that the lessee had to mail the eighty dollar check to the lessors by April 22 of each year. We must determine whether Burlington made an honest or good faith effort to perform the terms of the contract. If so, we must determine whether Burlington substantially performed or complied with this term of the lease.

The record in this case does not show that either the Grows or the Coxes notified Burlington about the change in ownership of the forty acres. Additionally, the record does not indicate or suggest that Burlington knew of the change in the land ownership before Burlington mailed the rental fee on March 23. The lease neither imposes a duty upon lessors to notify the lessee about changes in ownership nor imposes a yearly duty upon lessees to investigate ownership. In short, Burlington had no knowledge of the successor lessors and the lease is silent regarding notification of a change in land ownership. Thus, we find that

Burlington exercised good faith when it mailed the rental payment to the address in the lease.

We further find that Burlington exercised good faith when it later requested the Coxes to sign a ratification before it paid them the rental fee. The Grows, the prior lessors, had cashed the prior year's rental fee check even though the Coxes owned the land. The Grows' acts of cashing the check and remaining silent were inconsistent with the ownership records. Thus, Burlington did not act in bad faith when it required a ratification of the lease.

Based upon the aforementioned reasons, we find that Burlington exercised good faith. Thus, we can now determine if Burlington substantially performed its obligations under the lease.

■ The Coxes contend that the mere fact that they did not receive Burlington's payment by the deadline establishes that Burlington did not substantially perform. Burlington mailed the eighty dollar check on March 23, 1998, to the Grows, the lessors named in the lease, at the address contained in the lease. Burlington timely mailed the eighty dollar check to the correct address, but used the Grows' name instead of the Coxes' name. In short, Burlington complied with all of the terms of the lease except for using the Coxes' name. The Coxes do not argue that they suffered any reliance losses as a result of Burlington's actions. We find that this one error is merely a nominal, trifling, or technical departure from the term of the lease.

■ The Coxes further maintain that under the terms of the contract, Burlington had the option to avoid breaching the lease by coming directly to their home to make the rental payment when the mail option failed. We agree. However, the lease provides that Burlington either could tender the payment in person or by mail. The lease does not require the lessee to come to the lessors' home when the mail option fails. Thus, Burlington did not breach the lease when it chose only to use the mail option for the rental payment.

■ Finally, the Coxes contend that Burlington breached the lease when it failed to immediately send payment to the Coxes upon learning of their identity. Burlington's insistence on ratification caused further delay beyond the deadline date. However, as we discussed above, Burlington acted reasonably to protect its interests when it sent the ratification. Because we find that Burlington acted reasonably in light of the confusion the prior lessors caused, Burlington did not breach the lease by asking for ratification. Any departure made by Burlington from the terms of the lease by requesting ratification constituted no more than a nominal trifling departure. Consequently, we find that Burlington substantially performed or complied with the lease term that required Burlington to mail the rental fee to the lessors by April 22, 1998.

## III

We find that Burlington did not breach the terms of the lease, and consequently, the lease remains valid. Accordingly, we overrule the Coxes' sole assignment of error and affirm the judgment of the trial court.

*Judgment affirmed.*

PETER B. ABELE and HARSHA, JJ., concur.