[Cite as *Conny Farms, Ltd. v. Ball Resources, Inc.*, 2013-Ohio-2874.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| CONNY FARMS LTD., | ) | |
| | ) | CASE NO. 12 CO 18 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| | ) | |
| BALL RESOURCES, INC., et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:          Civil Appeal from Common Pleas
                                   Court, Case No. 08 CV 833.

JUDGMENT:                          Affirmed.

JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

APPEARANCES:

Dated: June 12, 2013

For Plaintiff-Appellant:

Attorney Scott Kurakowski
Attorney Aletha Carver
Krugliak, Wilkins, Griffiths & Dougherty
4775 Munson Street, NW
P.O. 36963
Canton, OH 44735-6963

For Defendants-Appellee:

Attorney Eric Walter
Dworken & Berstein Co., LPA
60 South Park Place
Painesville, OH 44077

Attorney John Rambacher
Winkhart, Rambacher & Griffin
825 South Main Street
North Canton, OH 44720

DeGenaro, P.J.

{¶1} Plaintiff-Appellant, Conny Farms Ltd., appeals the judgment of the Columbiana County Court of Common Pleas granting summary judgment in favor of Defendants-Appellees[1] in a suit concerning the validity of two oil and gas leases on Conny Farms' property. On appeal, Conny Farms asserts there are genuine issues of material fact concerning: (1) whether Conny Farms failed to comply with the "change in ownership clause" of the leases, and (2) whether the leases expired pursuant to their habendum clauses for failure to store gas on the property.

{¶2} Upon review, the trial court properly granted summary judgment in favor of Appellees and thus Conny Farms' assignments of error are meritless. The undisputed evidence demonstrates that Conny Farms failed to comply with the change in ownership clause and thus Appellees were not obligated to make payments. Further, gas was continuously stored on and withdrawn from the property. Thus there are no genuine issues of material fact regarding the expiration of the leases. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶3} This is the second time this case has come before this court. In *Conny Farms Ld. v. Ball Resources, Inc.*, (*Conny Farms I*) this court summarized the pertinent facts and procedural history as follows:

> Conny Farms is the record title owner of land in Columbiana County. Since 1950, there have been two oil and gas leases on that land, which were originally held by East Ohio Gas Company (nka Dominion East Ohio), but are now held by Appellees.[2] For convenience, the parties refer to the leases as the Gibson lease and the Thompson lease. The two leases are identical except for the dollar amounts, several dates, and the names of the original lessors.
>
> There was never a well drilled on the property; it was used for gas storage purposes only. Michael and Jennifer Conny purchased the

---

[1] Chowder Gas Storage Facility, LLC; Ball Resources, Inc., Bass Energy, Inc.; William E. Blair; Richard W. Petticrew; Jeffrey B. Petticrew; C. Richard Petticrew; and 5 Star, LLC.

[2] Chowder holds a 60% working interest in the leases, the other Appellees own the remaining aggregate.

property on October 7, 2005.  Prior to purchasing the property, the Connys were provided with a title commitment which revealed the existence of the leases.  The Connys transferred the property to Conny Farms Ltd. on September 6, 2006.  Michael and Jennifer Conny are the sole members of Conny Farms Ltd.  Both the Connys and Conny Farms admit they had knowledge of the leases prior to taking ownership to the property.

In a July 2, 2008 letter to lessees Ball Resources Inc. and William E. Blair, counsel for Conny Farms/The Connys stated the leases terminated because no payments had been made since the Connys took ownership of the property in 2005, and demanded cancellation of the leases.

Counsel for Ball Resources and Blair responded in a July 16, 2008 letter that he was aware of the transfer of the property to the Connys since his office handled the closing, noted the Connys were provided with the leases, were represented by independent third-party counsel in connection with that transaction, and stated with regard to the notice provision in the leases: "It is my understanding that Mr. Conny never notified Dominion as to the transfer of ownership in this property and did not notify my clients prior to the notification contained in your July 2, 2008 correspondence.  Based upon your July 2, 2008 correspondence, we will now transfer the storage rental to Mr. Conny in accordance with the terms of the subject leases."

And in a July 23, 2008 follow-up letter, counsel for Ball Resources and Blair provided documentation of the storage rental payments made by their predecessor in interest, Dominion, to the Connys' predecessor-in-interest, Klaus Forester, from April 2001 through May 2005.  This letter went on to state:

"Storage rental payments thereafter were suspended by

Dominion East Ohio since your client [Conny Farms] did not notify them of the real estate transfer. Based upon the notification contained in your July 2, 2008 correspondence regarding this transfer, these suspended funds will be transferred to Mr. Conny in the immediate future. Based upon this payment history and the express terms of the subject oil and gas leases, we believe that our leases remain valid and will proceed accordingly."

Less than one month later, Conny Farms filed a multi-count complaint which hinged on the allegation that Appellees breached the leases by failing to make any royalty or rental payments; and/or that the leases expired under their own terms because no production or storage of gas had occurred upon or under the property by Appellees or by their predecessor-in-title, Dominion.

*Conny Farms I* at ¶3-9.

{¶4} The leases each contain the following clauses that are germane to this appeal. First, there is a granting clause which states:

WITNESSETH: That the said Lessor, for and in consideration of the sum of One ($1.00) Dollar cash in hand paid, receipt of which is hereby acknowledged, and of the covenants and agreements hereafter contained on the part of the lessee to be paid, kept and performed, has granted, demised, and leased, and by these presented does grant demise, and lease exclusively unto [sic] said Lessee, for the purpose of drilling, operating for, producing, removing and disposing of oil and gas and for the further purpose and with the exclusive right in the Lessee, as he may see fit, to store gas of any kind and from any field or source by pumping or otherwise introducing the same into any sand or sands, sub-strata or horizon in or under said land, and to remove the same by pumping or otherwise through any well on said lands or other lands and

laying of pipe lines and of building tanks, powers, [sic] stations, and structures thereon to produce, save and take care of and transport said products, all that certain tract of land situate [sic] in the * * *

{¶5} The habendum clause provides:

It is agreed that this Lease shall remain in force for the term of ten years from the date hereof, and as long thereafter as the said land is operated by the Lessee in the search for or production of oil or gas or so long as gas is being stored, held in storage, or withdrawn from the premises by Lessee.

{¶6} The change in ownership clause states:

If the estate of either party is assigned—and the privilege of assigning in whole or in part is expressly allowed—the covenants hereof shall extend to the heirs, executors, administrators, and assigns, but no change in ownership of the land or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof.

{¶7} In its Complaint, Conny Farms raises causes of action sounding in quiet title, wrongful taking/misappropriation, slander of title, trespass, breach of lease agreement, interference with use and injunction, promissory estoppel and breach of fiduciary duty. Appellees answered, and both sides filed cross-motions for summary judgment. On October 16, 2009, the trial court issued a judgment entry denying Conny Farms' motion and granting Appellee Chowder Gas' motion.

{¶8} The trial court based its decision on a judicial ascertainment clause contained in the leases, in which the parties agreed that the lease "shall never be forfeited or cancelled for failure to perform, in whole or in part, any of its covenants, conditions or stipulations, until it shall have been first finally judicially determined that

such failure exists, and after such final determination, lessee is given a reasonable time therefrom to comply with any such covenants, conditions or stipulations." The trial court concluded that since there had been no prior judicial determination that the leases had been in violation of any of the lease covenants, conditions or stipulations there was no way that Conny Farms could sustain its case.

{¶9} On appeal, as a matter of first impression in Ohio, this court held that judicial ascertainment clauses are against public policy in Ohio and are therefore unenforceable. *Conny Farms I*, 2011-Ohio-5472, ¶27-28. Because the trial court had decided summary judgment on the basis of the judicial ascertainment clause and had not decided the merits of the other summary judgment arguments, this court remanded the case for further proceedings. *Id.* at ¶28.

{¶10} On remand, Appellee Chowder filed a renewed motion for summary judgment on January 27, 2012. On February 24, 2012, the trial court granted leave for all parties to file further pleadings relative to the previously filed cross-motions for summary judgment. The parties filed supplemental briefs in support of their respective motions for summary judgment. These briefs did not include any new evidence, only legal arguments; discovery was not reopened on remand.

{¶11} On April 18, 2012, the trial court issued a judgment entry overruling Conny Farms' motion and granting Chowder's motion. In so doing the trial court concluded that the Conny Farms "failed to send the proper notification to the Defendants and/or their predecessors when [Conny Farms] took ownership of the subject property. Their non-compliance with the lease term is fatal to [its] position. Further the evidentiary materials submitted by the Defendant, which are permitted to be considered under Rule 56, indicate that gas has been and is being stored under the subject property." The trial court dismissed Conny Farms' Complaint in its entirety.

**Standard of Review**

{¶12} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court and, therefore, engages in de novo review. *Parenti v. Goodyear Tire & Rubber Co.*, 66 Ohio App.3d

826, 829, 586 N.E.2d 1121 (9th Dist.1990). Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the nonmovant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390, 738 N.E.2d 1243 (2000). A fact is material when it affects the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999).

**{¶13}** When moving for summary judgment, a party must produce some facts that suggest a reasonable fact-finder could rule in her favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997). "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). The trial court's decision must be based upon "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." *Id.*, citing Civ.R. 56(C). The nonmoving party has the reciprocal burden of specificity and cannot rest on the mere allegations or denials in the pleadings. *Id.* at 293.

**Change in Ownership Clause**

**{¶14}** In its first of two assignments of error, Conny Farms asserts:

**{¶15}** "The trial court erred when it concluded Appellant failed to comply with the 'change in ownership' clause of the leases"

**{¶16}** In their motion for summary judgment, Appellees took the position that they were not obligated to pay Conny Farms delay rentals because Conny Farms failed to comply with the change in ownership provision in the leases, which states:

If the estate of either party is assigned -- and the privilege of assigning in

whole or in part is expressly allowed -- the covenants hereof shall extend to the heirs, executors, administrators, and assigns, but no change in ownership of the land or assignment of rentals or royalties shall be binding on the lessee *until after the lessee has been furnished with a written transfer or assignment or a true copy thereof.* (Emphasis added.)

{¶17} Appellees maintain that their predecessor Dominion had placed the funds due under the lease agreements into a suspense account, pending notification of the identity of the new lessors. When Chowder Gas became the primary lessee, it sent rental payments to the last known lessor, Klaus Forester. Stephen Rigo, President of Chowder Gas' parent company, testified that he had no knowledge that Conny Farms was the successor on the leases. Mr. Conny conceded that he failed to provide Appellees or Dominion with a written transfer or other notice when he purchased the property or when the property was transferred to Conny Farms.

{¶18} Conny Farms counters that Dominion, and Appellee Ball Resources had notice of the change in ownership. In support of its argument, Conny Farms cites to the July 2, 2008 letter from Conny Farms to Appellee Ball Resources and Appellee Blair, and the July 16, 2008 letter in response from counsel for those Appellees.

{¶19} Those letters do not create a genuine issue of material fact as to whether Conny Farms complied with the change in ownership clause. In the July 2, 2008 letter, counsel for Conny Farms contended that no lease payments had been made since the Connys took ownership of the property, thereby terminating the leases. It threatened to sue unless the lessees executed a cancellation or release of the two oil and gas leases.

{¶20} In the July 16, 2008 response letter, an attorney for Ball Resources and Blair stated he was aware of the transfer of the property to the Connys since the title agency within his law office handled the closing. He noted that the Connys were provided with the leases as part of the title insurance policy and that Mr. Conny was

represented by independent third-party counsel in connection with that transaction. He then cited to the change in ownership provision in the leases, as quoted above, and further stated: "It is my understanding that Mr. Conny never notified Dominion as to the transfer of ownership in this property and did not notify my clients prior to the notification contained in your July 2, 2008 correspondence. Based upon your July 2, 2008 correspondence, we will now transfer the storage rental to Mr. Conny in accordance with the terms of the subject leases." Conny Farms nonetheless maintained its position that the leases had terminated and filed the instant suit several weeks later.

**{¶21}** Conny Farms claims the July 16 letter proves that Appellees' predecessor Dominion had notice of the change in ownership. However, all this letter actually proves is that a title agency within the law firm handled the closing when the Connys purchased the subject property in 2005. Counsel's July 16 response letter does not prove that any of the lessees themselves had "been furnished with a written transfer * * * or a true copy thereof," when either the Connys or Conny Farms took ownership of the property, as required by the leases.

**{¶22}** Conny Farms argues that it substantially complied with the change in ownership provision. The substantial performance doctrine is well-established in Ohio with respect to most, but not all, contractual disputes. *See U.S. Bank, NA v. Stewart*, 2nd Dist. No. 21775, 2007-Ohio-5669, ¶40, citing *Ohio Farmers' Ins. Co. v. Cochran*, 104 Ohio St. 427, 135 N.E. 537 (1922). In *Ohio Farmers' Ins. Co.*, the Ohio Supreme Court held that the "long and uniformly settled rule as to contracts requires only a substantial performance in order to recover upon such contract. Merely nominal, trifling, or technical departures are not sufficient to breach the contract." *Id.* at paragraph two of the syllabus.

**{¶23}** It is undisputed that neither the Connys, nor Conny Farms made any attempts to notify Appellees of the change in ownership until June 2008, when it wrote to Ball Resources. Conny Farms seeks for the leases to be invalidated for Appellees failure to pay rentals during the time period (2005-2008) when neither Appellees nor

their predecessor had knowledge of the lessor's identity. This is a particularly harsh remedy when one considers Conny Farms is asking this court to hold it to a lower threshold, substantial performance, and yet impose a remedy that requires this court to strictly construe the lease. Substantial performance, by definition requires at least some performance; here Conny Farms completely failed to comply with the change in ownership provision. It is undisputed that the July 2, 2008 letter was the first communication Conny Farms had with Appellees or its predecessor Dominion.

{¶24} Conny Farms is actually making a constructive notice argument; Appellees "should have known" about the title transfer by virtue of the 2008 letter and thus contractually bound to pay delay rentals to Conny Farms despite the fact that Conny Farms failed to technically comply with the change in ownership provision. However, as a Texas Appeals Court recently explained with regard to change in ownership clauses, "[w]here such a provision is included in the lease, the lessee is not charged with constructive notice from the record of a subsequent transfer by the lessor." *Jones v. Clem*, Tx.App. No. 11-10-00123-CV, 2012 WL 1069168 (Mar. 29, 2012). Thus, any constructive notice argument also fails.

{¶25} Conny Farms also argues that the doctrine of waiver by estoppel precludes Appellees from requiring strict compliance with the change in ownership clause. Appellees correctly counter that this argument was never raised in the trial court. As this court has explained concerning summary judgment appeals "[e]ven though this is a de novo review of a summary judgment decision, there is no 'second chance to raise arguments' that should have been raised before the trial court." *Am. Express Centurian Bank v. Banaie*, 7th Dist. No. 10 MA 9, 2010-Ohio-6503, ¶24. Thus, we will not consider this argument.

{¶26} Finally, Conny Farms argues there are genuine issues of material fact regarding whether the "suspense payments" were proper under the terms of the lease agreements. Once payments to the prior lessor were returned unclaimed, Dominion began placing payment in a suspense account pending notification of the new lessor.

{¶27} While the leases do not expressly provide for suspense payments in the

event the identity of a new lessor is unknown, the plain language of the change in ownership provision does not require *any payment* until actual written notice of a change in ownership has been provided to the lessee. Appellees and their predecessor acted in good faith by suspending the payments as they did.

{¶28} The Fourth District, in construing an oil and gas lease that had no change in ownership provision but required the lessees to mail or tender the rental payment to the lessors, concluded that absent any indication that either the original lessors or their successors notified the lessee about the change in ownership, the lessee acted in good faith by mailing the annual rental payment to the original lessors at the address specified in the lease. *Burlington Resources Oil & Gas v. Cox*, 133 Ohio App.3d 543, 548-549, 729 N.E.2d 398 (4th Dist.1999). Thus, even in the absence of an express change in ownership provision, the court declined to place a burden upon the lessee to constantly search title records in search of the identity of the lessors:

> The [lessors] argue that [the lessee] should fill the gap in this contract by using its vast resources each year to identify the lessors or successor lessors. The [lessors] do not say how [the lessee] should accomplish this task. Apparently, they want us to impose a duty of good faith upon [the lessee] to check the records at the Jackson County Recorder's Office each year before it sends out the eighty dollar rental payment. Under the terms the [lessors] seek to imply, if the contract remained in force for ten years, then [the lessee] would have the duty to check the record ten times. After carefully reviewing the terms of the lease, we do not think that the original parties intended to impose this yearly burden upon the lessee.

*Id.* at 548.

{¶29} This reasoning is even more applicable in the present situation, where there *is* a change in ownership clause in the lease. Neither Appellees nor their

counsel had a duty to search title records or counsel's internal records to ascertain the identity of the new lessors after delay rental payments to the prior lessor were returned unclaimed. To so hold would obviate the purpose of the change in ownership clause.

{¶30} For all of the above reasons, reasonable minds could come to only one conclusion, that Conny Farms failed to comply with the change in ownership clause. Accordingly, Conny Farms' first assignment of error is meritless.

## Gas Storage

{¶31} In its second of two assignments of error, Conny Farms asserts:

{¶32} "The trial court erred when it concluded gas has been and is being stored under the subject property."

{¶33} Conny Farms argues that the leases expired pursuant to their respective habendum clauses, which state:

{¶34} "It is agreed that this Lease shall remain in force for the term of ten years from the date hereof, and as long thereafter as the said land is operated by the Lessee in the search for or production of oil or gas *or so long as gas is being stored, held in storage, or withdrawn from the premises* by Lessee." (Emphasis added.)

{¶35} Appellees counter that gas has been continually stored on and withdrawn from the property and therefore the habendum clause argument is without merit. Appellees point to the deposition testimony of Stephen Rigo, President of Appellee Chowder Gas' parent company. Chowder Gas had taken a majority working ownership interest in the leases in 2008. Rigo testified that there was gas presently in the storage field: "We own gas that's in storage gas that's in there. We have not injected anything ourselves yet. We're in the process of actually installing a compressor which would allow us to do it * * * But yes, it's a storage unit and it's being withdrawn on right now."

{¶36} Rigo admitted that to his knowledge Dominion had not injected any gas into the storage fields since before 2005. However, he testified there had been on-going storage and withdrawals of gas since that time:

A. There was no injection, but here's 2008 from an engineer, *projected remaining inventory* contained in Dominion East Ohio, Columbiana storage field calculated at 720,000 MCF. So there's plenty of storage in there.

Q. Were you aware of when Dominion last withdrew any gas from that storage field?

A. Yes. Since November 2002, Dominion has made three withdrawals of gas from Columbiana storage field. This first from November 2002 to April 2003 – do you want to know all this?

Q. Yes.

A. The second, from January to July 2005, a total of 350,000 MCF. And the last, from January to May of 2006, a total of 50,000 MCF. Since then we've withdrawn gas, as did our predecessor.

Q. Do you know when your predecessors withdrew gas?

A. Yes.

Q. When?

A. Well they've sold gas that was withdrawn from the field under a contract with a company called Integyrs, I-n-t-e-g-y-r-s. And the tract was for 12 months starting in April 2008 and it expired March 2009. It called for 9,000 decatherms a month, I believe, at a fixed price. Since then they've been - - we just started in May, they're withdrawing.

{¶37} Conny Farms provided no evidence to contradict Rigo's testimony, instead taking small portions of that testimony out of context in an attempt to argue that gas has not been stored on the property for many years. The leases have not expired under their habendum clauses as gas was continuously held in storage on the property and continually withdrawn from the property since the time Conny Farms took ownership. Conny Farms' argument to the contrary is meritless.

{¶38} Conny Farms also asserts in this assignment of error that Appellees'

predecessor Dominion failed to pay Conny Farms' predecessor some of the delay rentals due under the leases.  Specifically, Conny Farms asserts: "In the least, this Court should determine that Appellees no longer maintain the right to drill wells for production which was terminated and now vests with Appellant."  This argument was raised for the first time on remand to the trial court.

{¶39}  The leases provide the following with regard to delay rentals:

If no well is drilled or if the production of gas from the leased premises has terminated and so long as gas is being stored, held in storage or withdrawn from the premises by the lessee, lessee shall pay the lessor an annual rental of [$186.00 for Thompson lease, $222.00 for Gibson lease] *it being understood that such payments shall be in lieu of and not in addition to royalties or rentals otherwise provided for by this agreement* even though the Lessee continues to store gas within the leased land after having plugged and abandoned all wells thereon.  It is agreed that the Lessee may drill or not drill on said land, may store gas therein, hold the same in storage, or withdraw any gas from storage, as he may elect and rentals paid and to be paid constitute adequate compensation for such privilege.

If operations for the drilling of a well for oil and gas are not commenced on the said lands on or before the 9th of June 1950 this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor or the lessor's agent the sum of [[$186.00 for Thompson lease, $222.00 for Gibson lease], which shall act as rental and confer the privilege of deferring the commencing of a well for a period of twelve months from said date.  In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods successively.  And it is understood and agreed that the consideration first recited herein, the down payment

covers not only the privilege granted to the date when the first rental is payable as aforesaid, but also the lessee's option of extending the period as aforesaid, and any and all rights conferred. (Emphasis added.)

{¶40} Conny Farms claims that no delay rental payments were ever made pursuant to the second clause to preserve the future right to drill. According to deposition testimony of Kimberly Milano, Dominion's Land Service Coordinator, to her knowledge no payment pursuant to the second clause was ever made to the prior lessor. This is consistent with Dominion's annual rental payment history, which was an exhibit during Milano's deposition.

{¶41} However, based upon the language of the lease agreements, a second payment was not necessary to preserve the lessee's future right to drill. Notably, the heading used by Conny Farms at page 18 of its appellate brief ("Annual Payment for Future Right to Drill Producing Well,") does not exist in the actual lease agreements. Further, the language in the first clause provides that a payment pursuant to that clause is sufficient to preserve the future right to drill insofar as it states: "such payments shall be *in lieu of and not in addition to* royalties or *rentals otherwise provided for by this agreement*," and further that "[i]t is agreed that the Lessee may drill or not drill on said land, * * * , as he may elect and rentals paid and to be paid constitute adequate compensation for such privilege." (Emphasis added.)

{¶42} For all of the above reasons, Conny Farms' second assignment of error is meritless. There is no genuine issue of material fact concerning the expiration of the leases pursuant to the habendum clauses; rather, the evidence demonstrates that gas has been and is being stored under the subject property.

{¶43} In sum, the trial court properly granted summary judgment in favor of Appellees and thus Conny Farms' assignments of error are meritless. The undisputed evidence demonstrates that Conny Farms failed to comply with the change in ownership clause and thus Appellees were not obligated to make payments. Further,

gas was continuously stored on and withdrawn from the property.  Thus, there are no genuine issues of material fact regarding the expiration of the leases.  Accordingly, the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.