[Cite as *Shimrak v. Goodsir*, 2014-Ohio-3716.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 100612**

---

## PETER E. SHIMRAK, ET AL.

PLAINTIFFS-APPELLEES

vs.

## SUSAN GOODSIR, ET AL.

DEFENDANTS-APPELLANTS

---

**JUDGMENT:**
REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-794008

**BEFORE:** Stewart, J., Rocco, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** August 28, 2014

**ATTORNEY FOR APPELLANT**

Mark I. Wachter
Wachter Kurant, L.L.C.
Pepper Pike Place
30195 Chagrin Boulevard, Suite 300
Cleveland, OH    44124


**ATTORNEYS FOR APPELLEES**

Amanda A. Barreto
Steven M. Ott
Ott & Associates Co., L.P.A.
Penton Media Building
1300 E. Ninth Street, Suite 1520
Cleveland, OH    44114

MELODY J. STEWART, J.:

{¶1} This is an appeal on questions of law concerning the interpretation of a financing contingency clause in a residential property purchase agreement. The seller of the property alleged that after the buyers were neither approved nor denied financing for the purchase within a certain period of time, the contingency clause in the agreement gave the buyers two options: either request that the seller grant a written extension of time to obtain financing or remove the contingency in writing. The seller maintained that the buyers did not request an extension of time nor did they waive the financing contingency in writing, so the buyers breached the purchase agreement by not going forward with the purchase. The buyers claimed that a failure to obtain financing under the terms of the contingency clause rendered the purchase agreement null and void. The court agreed with the buyers and this appeal followed.

I

{¶2} On May 24, 2006, defendant-appellant Susan Goodsir, the successor trustee to the William Meyer Trust and seller, agreed with plaintiffs-appellees Peter and Patricia Shimrak, buyers, to a purchase agreement for the sale of a house that was an asset of the trust. The Shimraks paid $2,000 in earnest money and the parties set a closing date of August 24, 2006, for the transaction.

{¶3} Paragraph E of the purchase agreement contained the following financing contingency:

This transaction is conditioned upon BUYER obtaining a commitment for a first mortgage loan (the "Loan") from Howard Hanna Mortgage Services or such other lending institution chosen by BUYER in the amount set forth in D(3) above, or in a lesser amount acceptable to BUYER. BUYER agrees to apply in writing for the loan within five (5) Days, as defined in Section Q, after the date of Acceptance, to cooperate fully with the lender's requests for information and to use good faith efforts to obtain the Loan. If BUYER's loan application is neither approved nor denied within 30 days after the date of Acceptance, then BUYER may either request a written extension or remove this contingency in writing.

If BUYER's loan application is denied, or if SELLER refuses an extension and BUYER does not remove this contingency, then this agreement ("AGREEMENT") shall be null and void, neither BUYER, SELLER, nor any REALTOR(S) involved in this transaction shall have any further liability or obligation to each other, and both BUYER and SELLER agree to sign a mutual release whereupon the earnest money shall be returned to BUYER.

{¶4} The uncontested facts show that the Shimraks applied for financing, but were unable to obtain a commitment from a lender. On August 4, 2006, Goodsir first learned about the Shimraks's difficulties in obtaining financing and that the Shimraks might be requesting a delay in closing. On August 7, 2006, the Shimraks were told that their lender would approve financing only upon the sale of their house. They asked Goodsir to amend the purchase agreement to add a new contingency making their purchase of Goodsir's house contingent upon the Shimraks selling their home. Goodsir formally rejected the proposed amendment of the purchase agreement. With no financing forthcoming because they had yet to sell their home, the Shimraks notified Goodsir on August 18, 2006, that they would be withdrawing from the transaction. Goodsir then relisted the house for sale, eventually agreeing with another buyer in May 2007 to sell the house for $65,000 less than what the Shimraks had agreed to pay.

**{¶5}** The Shimraks initiated this action in the Rocky River Municipal Court seeking return of the $2,000 they paid as earnest money for the purchase. Goodsir then counterclaimed for breach of contract relating to the Shimraks' failure to perform as outlined in the purchase agreement. She also sought a declaratory judgment of her rights under the purchase agreement. With Goodsir's counterclaim exceeding the monetary jurisdiction of the municipal court, the case was transferred to the court of common pleas. The court of common pleas then released the earnest money to the Shimraks without objection from Goodsir.

**{¶6}** The court conducted a hearing on the declaratory judgment action. Goodsir argued at the hearing, as she does in this appeal, that the financing contingency in Paragraph E gave the Shimraks one of two options in the event they were neither approved nor denied financing within 30 days after she accepted the purchase agreement: either request a written extension of time or remove the contingency in writing. She maintained that the Shimraks offered a third option by proposing to amend the purchase agreement to make it contingent on the sale of their house. Goodsir argued that the Shimraks' proposal was not an option authorized by the purchase agreement and that their failure to exercise one of the two options stated in the purchase agreement meant that they were obligated to complete the purchase and their failure to do so was a breach of the purchase agreement.

**{¶7}** The Shimraks argued that the two options contained in Paragraph E — either make a request for a written extension of time or remove the financing contingency —

were discretionary courses of action for them, neither of which superseded their right to walk away from the purchase agreement if they were not approved for financing after the 30-day period.

{¶8} In a written opinion, the court found that Paragraph E's use of the word "may" when referring to the two options available to a buyer in the event the loan application was neither approved nor denied meant that those options were discretionary. The court stated:

> As the Court reads the Agreement, if after thirty (30) days, approximately June 24, 2006, [Shimrak] was unable to secure the financing then [Shimrak] has the option to do at any point in time, one or none of the following:   1. Request an additional extension; 2. Remove the contingency.   Furthermore, if at whatever point [Shimrak] requested such an extension and [Goodsir] denied said extension, then the Agreement was null and void.

> Here, at the end of the thirty (30) day time period, [Shimrak] was unable to secure the financing.   Some ninety (90) days after the Agreement was entered into, in August 2006, [Shimrak] requested an extension pursuant to Section E.   [Goodsir] denied the request for an extension.   Upon that denial, the Agreement was null and void pursuant to Section E. [Shimrak] should not be punished here for [Goodsir's] use of a poorly written contract that failed to specify a time frame for the request for an extension or removal of the clause.

II

{¶9} R.C. 2721.03 states that any person interested in a contract may have determined any question of construction arising under the contract.   The interpretation of a contract is a question of law for the court.   *In re All Kelley & Ferraro Asbestos Cases*, 104 Ohio St.3d 605, 2004 Ohio-7104, 821 N.E.2d 159, ¶ 28.   The court must give the words used in a contract their plain and ordinary meaning in order to ascertain the intent

of the parties to the contract, *Penn Traffic Co. v. AIU Ins. Co.*, 99 Ohio St.3d 227, 2003-Ohio-373, 790 N.E.2d 1199, ¶ 9, unless the common words result in a "manifest absurdity or some other meaning is clearly evidenced from the face or overall contents" of the agreement. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus.

## III

**{¶10}** The court's ruling made three points: first, that the options set forth in Paragraph E of the agreement were discretionary; second, that the agreement imposed no time limitations on when those options were to be exercised; and third, that the request to add a contingency for the sale of the Shimraks' home constituted a request for an extension that Goodsir denied, thus rendering the contract null and void. Goodsir argues that the court erred on all three points. We agree.

## A

**{¶11}** The disputed language of Paragraph E states: "If BUYER's loan application is neither approved nor denied within 30 days after the date of Acceptance, then BUYER *may either* request a written extension or remove this contingency in writing." (Emphasis added.)

**{¶12}** The court made the error of construing the word "may" in isolation from the word "either." We interpret the disputed sentence to mean that if the buyer's application for financing is neither approved nor denied within 30 days of the seller accepting an offer to purchase the property, the buyer must exercise one of the two stated options: and

the buyer has the discretion to choose which of the two options to exercise. In other words, we do not read the discretionary word "may" in isolation, but as "may either" — the word "either" being mandatory and the word "may" being discretionary as to which of the two required options the buyer must exercise. Admittedly, the language used in Paragraph E is not a model of clarity, but to interpret it as the court did (that the Shimraks could invoke "one or none" of the options listed) would render the clause completely meaningless: agreements are made to evoke performance, not to encourage the lack thereof. Courts must employ the construction of a contract that makes the agreement fair and reasonable and gives the agreement meaning and purpose. *See GLIC Real Estate Holdings, LLC v. Bicentennial Plaza Ltd.*, 2012-Ohio-2269, 971 N.E.2d 404, ¶ 10 (10th Dist.). The court's interpretation of Paragraph E inserted a new option that had no basis in the overall context of the agreement.

{¶13} In *Perhavec v. Rosnack*, 11th Dist. Lake No. 2003-L-157, 2005-Ohio-138, the court of appeals construed identical language to mean that should a loan application be neither approved nor denied within a stated number of days after the date of acceptance, the buyers "should request a written extension of this contingency or request this contingency be removed from the contract." *Id.* at ¶ 15. The court of appeals' use of the word "should" suggested that the options provided were mandatory and the seller's discretion extended only as far as deciding which option to exercise. *Compare State v. James*, 4th Dist. Ross No. 13CA3371, 2013-Ohio-5322 (stating that when a plea bargain, which is governed by the law of contract, is violated by the state, the court "may either"

allow the negotiated plea to be withdrawn or require the state to fulfill its end of the bargain, but nonetheless must choose one of those two options).

{¶14} Our conclusion is reinforced by the nature of the options available to the buyer in the event the buyer's application for financing is neither approved nor denied within 30 days of the seller accepting the purchase offer. Those options — requesting an extension of time to obtain financing or removing the contingency — put the obligation solely on the buyer after the 30-day period had expired. The only time that Goodsir had the obligation to act was if the Shimraks exercised the option of seeking an extension of time to obtain financing. If the Shimraks had requested an extension of time to obtain financing, the onus would have shifted to Goodsir to either grant the extension or deny it, making the purchase agreement null and void. The Shimraks did not pursue this option and cannot complain that Goodsir somehow failed to act as required by the purchase agreement.

{¶15} Contrary to the court's conclusion, there is no option that simply allows the buyer to walk away from the purchase agreement with impunity, nor could that option be inferred under the circumstances. Having offered to purchase the property, the buyers "cannot defeat the contract by their own fault" and "must make a bona fide effort" to obtain financing. *Graham-Chrysler Plymouth, Inc. v. Warren*, 9th Dist. Summit No. 9222, 1979 Ohio App. LEXIS 9939 (Aug. 15, 1979). While the parties agree that the Shimraks acted in good faith to obtain financing, the fact remains that the Shimraks had

performance obligations under the terms of the agreement and could not unilaterally withdraw from the purchase agreement.

{¶16} It is important to acknowledge that this is not a case where the Shimraks were denied financing yet were forced to go through with the purchase. The purchase agreement made it clear that had financing been denied, the purchase agreement would become null and void. The Shimraks' request for financing was neither approved nor denied, leaving them in limbo, but not without recourse. They could have requested an extension of time to obtain financing and shifted the burden of action to Goodsir, who could either grant the request and allow the contract of sale to continue on or deny the request and void the purchase agreement. The Shimraks could also have removed the financing contingency to allow the sale to continue to closing. What they could not do was simply take no action after the 30-day time period had expired, not act as required by Paragraph E, and then renege on their promise to buy the property.

B

{¶17} Having found that the purchase agreement required the Shimraks to choose one of two options in the event their application for financing was neither approved nor denied, we next consider the court's ruling that the Shimraks "did elect one of the enumerated options" under Paragraph E. Judgment entry at 5. The court considered the Shimraks' proposed addendum dated August 7, 2006, to make the purchase agreement contingent upon the sale of their house, to be an option under the agreement.

{¶18} The court erred by finding that the Shimraks elected one of the enumerated options available under Paragraph E. The purchase agreement provides only two options in the event a buyer's application for financing is neither approved nor denied within 30 days after the date of acceptance: request a written extension or remove the financing contingency. The Shimraks did not elect one of these options, but instead offered a third: they requested an addendum to the purchase agreement making the purchase agreement contingent on the sale of their house.

{¶19} The court erroneously equated the Shimraks' request to add a contingency relating to the sale of their home as being the same thing as a request for an extension of time to obtain financing. A contingency is very different from an extension. In a contract, a "contingency" is a condition precedent that must occur for the parties' promises to be binding. *Hussey v. Daum*, 2d Dist. Montgomery No. 14246, 1994 Ohio App. LEXIS 2338 (June 1, 1994). If the stated contingency does not occur, there is no duty to perform under the terms of the contract. An extension of time to perform the obligations of a contract does not excuse performance, but merely delays it. The proposed addendum was not a request for an extension of time, but a fundamental change to the purchase agreement.

{¶20} In addition, the court's conclusion that Goodsir "denied the request for an extension," judgment entry at 4, is wholly contradicted by the Shimraks' evidence. In a letter dated August 18, 2006, Peter Shimrak responded to Goodsir's contention that the Shimraks breached the purchase agreement by noting that "I have not signed anything

removing the contingency, and I have not asked you for an extension * * *." *See* Plaintiff's exhibit No. 6. With the Shimraks having conceded in writing that they did not request an extension of time even though their financing had been neither approved nor denied, the court erred by finding that Goodsir denied a request for an extension of time and thus rendered the purchase agreement null and void.

C

**{¶21}** Although we have found that the court incorrectly concluded that the Shimraks did employ one of the options set forth in Paragraph E of the purchase agreement, the court nonetheless concluded that there were no time limitations on when an option had to be exercised. Goodsir argues that this finding gave the Shimraks an unstated additional option under the purchase agreement: do nothing. Goodsir argues that by so ruling, the court made the 30-day time period in which to obtain financing meaningless and allowed the Shimraks to wait until just before the time of closing to inform her that they had not obtained financing.

**{¶22}** Paragraph E sets forth two time frames: (1) within five days after acceptance of the offer to purchase, the Shimraks had to apply in writing for a commitment for a first mortgage loan; and (2) if the Shimraks' loan application was neither approved nor denied within 30 days after the date Goodsir accepted the Shimraks' offer to purchase the property, the Shimraks had to elect to either request a written extension in which to obtain financing or remove the financing contingency in writing. The question we must resolve then is when did the Shimraks have to elect one of the

options after their loan application was neither approved nor denied within the 30-day time frame.

**{¶23}** At the outset, we find the court erred by concluding that Paragraph E's failure to state a time frame for when the Shimraks had to elect which option to pursue was the fault of Goodsir, who used a "poorly written contract that failed to specify a time frame for the request of an extension or removal of the [financing contingency] clause." Judgment entry at 4. The undisputed evidence showed that the Shimraks' real estate agent prepared the offer using an "Offer to Purchase Real Estate and Acceptance" form prepared on her company's letterhead. Not only did Goodsir's real estate agent not prepare the offer submitted by the Shimraks, Goodsir's real estate agent worked for a different real estate company. The evidence showed that the Shimraks selected the form on which they offered to purchase the property, so the court should not have blamed Goodsir for the use of a "poorly written contract." To the extent that the court believed the Shimraks were being "punished" by the terms of the purchase agreement, that punishment was their own doing.

**{¶24}** Finding that Paragraph E of the purchase agreement should have been construed against the Shimraks begs the question of whether the contract is ambiguous. Silence in a contract is not the same as an ambiguity. *E. Ohio Gas Co. v. Akron*, 81 Ohio St. 33, 54-55, 90 N.E. 40 (1909). Paragraph E omitted any reference to a time frame in which a buyer whose application for financing is neither approved nor denied must elect one of the provided options. Unlike an ambiguity that exists when contract language is

susceptible of more than one interpretation, *State ex rel. Toledo Edison Co. v. Clyde*, 76 Ohio St.3d 508, 513, 668 N.E.2d 498 (1996), the purchase agreement was simply silent on when the Shimraks had to exercise the options provided in Paragraph E. Absent any ambiguity, the court should not have endeavored to construe that part of the purchase agreement in favor of either party, let alone in favor of the Shimraks.

{¶25} With the purchase agreement silent on when a buyer was required to elect one of the two options available under Paragraph E, we employ the rule that if a contract is silent on a point, "[t]he parties to a contract are required to use good faith to fill the gap." *Burlington Res. Oil & Gas Co. v. Cox*, 133 Ohio App.3d 543, 547, 729 N.E.2d 398 (4th Dist.1999). "'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Ed Schory & Sons v. Francis*, 75 Ohio St.3d 433, 443-444, 662 N.E.2d 1074 (1996), quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357-1358 (7th Cir.1990). "What the duty of good faith consists of depends upon the language of the contract in each case which leads to an evaluation of reasonable expectations of the parties." *Fultz & Thatcher V. Burrows Group Corp.*, 12th Dist. Warren No. CA2005-11-126, 2006-Ohio-7041, ¶ 34, citing *B-Right Trucking Co. v. Interstate Plaza Consulting*, 154 Ohio App.3d 545, 2003-Ohio-5156, 798 N.E.2d 29, ¶ 32 (7th Dist.). The court therefore erred by concluding as a matter of law that there was no particular

time frame in which the Shimraks had to elect one of the options available under Paragraph E.

{¶26} It is unnecessary in this case for us to establish a bright-line rule under which the Shimraks had to exercise one of the options under Paragraph E because we find as a matter of law that, based on the facts of this case, the Shimraks did not act within a reasonable period of time after the expiration of the 30-day period to inform Goodsir that their application for financing had neither been approved nor denied. The 30-day period for obtaining financing expired on June 24, 2006, yet the Shimraks waited until August 7, 2006 to inform Goodsir that their application had been neither approved nor denied. Nothing in the evidence showed why the Shimraks could not have communicated with Goodsir immediately after the 30-day period or shortly thereafter. Indeed, the Shimraks appeared unconcerned about the consequences of any delay to Goodsir: when Goodsir's attorney pointed out to Peter Shimrak that August 7, 2006 (the date on which the Shimraks proposed to amend the purchase agreement) was well beyond the 30-day time period set forth in Paragraph E, Peter Shimrak responded, "Whatever." Tr. 30.

{¶27} The consequence of the Shimraks' failure to timely exercise one of the options set forth under Paragraph E of the purchase agreement was manifest. The Shimraks knew that Goodsir had received at least one other offer on the house — the existence of another bidder is what prompted the Shimraks to offer the list price for the house. When the bank neither approved nor denied their application for financing within 30 days of applying for financing, the Shimraks did nothing. Surely it was their hope

that their house would sell and they would have the funds to purchase the Goodsir property. By their own admission, the Shimraks "really wanted the place[.]" But by waiting so long after the expiration of the 30-day period, the Shimraks must have known that any chance Goodsir had to entertain and/or accept other offers on the house was stifled. From the time the Shimraks' offer was accepted to the time when they formally withdrew their offer, almost three months had elapsed. It was highly unlikely that any potential buyer who tendered a competing offer would wait that long and renew the same offer previously made. Under the circumstances, their action was untimely and unreasonable.

IV

**{¶28}** Despite our finding that the Shimraks did not timely exercise one of two options available to them under Paragraph E when their lender had neither approved nor denied their application for financing, a final question remains: was the Shimraks' loan application ultimately denied so as to render the purchase agreement null and void?

**{¶29}** The plain language of the purchase agreement states that a denial of a loan application renders the agreement null and void. The Shimraks argue that the August 7, 2006 email sent by their bank stating that it would "provide financing to Peter Shimrak * * * once his current home sells" was a denial of financing that rendered the purchase agreement null and void.

**{¶30}** Even if we assume that the Shimraks are correct that their lender making financing contingent upon the sale of their house constituted a denial of financing, we

must reject the Shimraks' argument because they were already in breach of the purchase agreement by failing to timely exercise one of the options listed in Paragraph E of the agreement when they were informed of their claimed denied financing. They cannot rely on a subsequent denial of their loan application to purge an earlier breach.

{¶31} In any event, the Shimraks try to have it both ways when they argue that their lender denied their loan application on August 7, 2006, by telling them that it would approve financing only if they sold their home. If that was truly the case, their application for financing would have been denied within 30 days of making their application for financing because the same situation existed. Yet at that point in time, the Shimraks plainly did not consider their application for financing rejected and the purchase agreement null and void. They concede in their appellate brief that their "loan application was not approved or denied within 30 days after Goodsir's acceptance." Appellee's brief at 6. Having conceded that point, they cannot argue that their lender rejected their application for financing by setting forth a condition that had existed all along.

{¶32} In fact, it was disingenuous for the Shimraks to argue that their lender's August 7, 2006 notice that it would approve financing only upon the sale of the Shimraks' home was the first time that they were aware this would be a condition of financing. The record suggests that the Shimraks knew all along that their application for financing would be approved only upon the sale of their house. In his testimony before the court,

Peter Shimrak testified that he and his wife had suffered certain financial reversals and needed financing to buy the Goodsir property. He was asked:

Q. Did you apply for financing by May 30th, 2006?

A. Of course we did.

Q. Okay.

A. But we were never able to get financing because we couldn't sell our home.

Tr. 20.

{¶33} The above testimony was consistent with other testimony by Peter Shimrak; namely, that he did not remove the financing contingency after the 30-day window for obtaining financing closed because "I had to have financing." Tr. 28. And in response to a question of why the Shimraks had not made the purchase agreement contingent on the sale of their house, Peter Shimrak testified it was "[b]ecause I was convinced we were going to sell our home and buy this nice home, and it just didn't work out." Tr. 29. Based on this testimony, the Shimraks knew at the time they entered into the purchase agreement that they would have to sell their home in order to obtain financing for the Goodsir property. They could not credibly argue that August 7, 2006 was the first time they learned that their loan application would be approved only on the condition that they sell their home. What is more, it is apparent from the circumstances that the Shimraks did not consider their application for financing to have been denied at the time they were obligated to exercise one of the options listed under Paragraph E. Indeed, having conceded that point, they cannot argue that their lender rejected their application for

financing by setting forth a condition that had existed all along. To hold otherwise would allow a buyer to indefinitely string along a seller and then walk away from an agreement, leaving the seller with no recourse.

V

**{¶34}** In conclusion, we find that the court erred as a matter of law by granting judgment to the Shimraks. The assigned errors are sustained. This matter is reversed and remanded to the trial court with instructions to enter judgment for Goodsir. We express no opinion on the amount of damages to be awarded. That determination must first be made by the trial court.

**{¶35}** This cause is reversed and remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover of appellees her costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

KENNETH A. ROCCO, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR