[Cite as *Phillimore v. Butterbaugh*, 2014-Ohio-4641.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| | | JUDGES: |
| DON PHILLIMORE | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 14CA32 |
| AUBRI BUTTERBAUGH | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Civil appeal from the Richland County Court
of Common Pleas, Case No. 2012CV1360


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    October 17, 2014


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOHN RUBIS                               ERIC S. MILLER
1360 E. Ninth Street, 1000 IMG Center    13 Park Avenue West, Suite 608
Cleveland, OH  44114                      Mansfield, Ohio 44902

*Gwin, P.J.*

{¶1} Appellant appeals the March 17, 2014 judgment entry of the Richland County Court of Common Pleas overruling her objections to the magistrate's decision, adopting the magistrate's decision, and entering judgment for appellee on appellant's counterclaims.

*Facts & Procedural History*

{¶2} In September of 2011, appellant Aubri Butterbaugh ("Butterbaugh") contacted appellee Donald Phillimore ("Phillimore") about renting an apartment owned by Phillimore. On September 29, 2011, the parties signed a lease for 555 Crescent Road, Apartment C, Mansfield, Ohio, that was to commence on November 1, 2011. The lease, entitled "rental agreement," is a one page-document signed by Butterbaugh and states as follows:

This agreement is made this 29th day of Sept. 2011 at Mansfield, Ohio between Don R. Phillimore, Owner and Aubri Butterbaugh, known as the Tenant. The owner does rent to Tenant on a yearly basis and is paid monthly. Beginning the 1st day of November 2011 at a monthly rental of $600.00. If paid before or on due date rent will be $550.00. The premises located at 555 #3 Crescent Road Mansfield, Ohio, 22907.

{¶3} The agreement further provided that: the tenant will pay all charges for utilities used by him upon said premises, said premises will be kept in a clean and orderly condition, all damages to the premises or buildings caused by accident, noise, abuse or neglect, shall be repaired at the expense of the tenant, a security deposit of

$550 made by above-named tenant is refundable within 30 days after vacating of the premises, providing the tenant has fulfilled the leasing period and the terms of the Leasing Agreement, it is agreed that the $550 security deposit is not to be used for any part of the monthly rent payment, and no promises or agreements have been made other than the within terms.  As discussed below, the parties dispute what subsequently occurred.

{¶4}  On December 6, 2011, Phillimore filed a complaint in Mansfield Municipal Court containing causes of action for both eviction and damages for unpaid rent and late fees against Butterbaugh.  Both parties appeared at the eviction hearing pro se on December 20, 2011, and, on the same day, Phillimore was granted an order of eviction and writ of restitution for December 27, 2011, against Butterbaugh.  Butterbaugh vacated the premises on December 26, 2011.  On January 23, 2012, Phillimore filed a motion for default judgment on his damages claim for unpaid rent and late fees.  The motion for default was granted on January 25, 2012.  Phillimore subsequently filed a Notice of Court Proceeding to Collect Debt and wage garnishment against Butterbaugh.

{¶5}  Butterbaugh filed a motion for stay of execution of judgment on March 27 and a motion for relief from judgment on March 29, 2012 as to the default judgment taken against Butterbaugh on January 25, 2012 for $600 plus court costs. Butterbaugh's motion for relief from judgment was granted on August 29, 2012 due to inadvertence.  In October of 2012, the proceeds from the garnishment were utilized to pay court costs and the balance of the funds were returned to Butterbaugh.  On October 12, 2012, Butterbaugh filed an answer to Phillimore's complaint and counterclaims for retaliatory eviction, wrongful eviction, wrongful seizure of security deposit, deceptive act

and practice pursuant to the Ohio Consumer Sales Practices Act, wrongful garnishment and fraud, and constructive eviction. Because of the jurisdictional limit on damages of the counterclaims, the case was transferred to the Richland County Court of Common Pleas. The trial court subsequently granted Phillimore's motion for summary judgment on the constructive eviction claim since Butterbaugh did not relinquish possession of the premises prior to the judicial eviction. A bench trial was conducted before a magistrate on May 31, 2013. At the beginning of the trial, Phillimore dismissed his complaint for damages and the parties proceeded on Butterbaugh's counterclaims.

{¶6} Butterbaugh testified on direct examination. She stated that when she signed the lease on September 29, she gave Phillimore a check for the $550 security deposit, but told Phillimore to wait a few days to cash the check. Because Phillimore did not wait to cash the check, the check bounced. Butterbaugh testified that she gave him a second check about a week later and paid the $12 processing fee for the original bounced check. Butterbaugh stated she paid Phillimore $200 to move in early on October 20th. After Butterbaugh told Phillimore she would like a washer and dryer, Phillimore offered to purchase a washer and dryer, front the purchase price, and sell them to her over the twelve month lease term at $50 per month.

{¶7} Butterbaugh testified that when she moved into the apartment on October 20th, the apartment was dirty, the toilet had overflowed, and there was standing water in the shower. When she called Phillimore about the issues, he sent over a plumber that evening who snaked the toilet and drains and gave her a bacterial solution to use in the shower. Butterbaugh stated that she set up an online bill pay from her bank account

prior to November 1, but the November rent payment was erroneously sent to her address rather than Phillimore's address.

{¶8} Butterbaugh testified that in late November her entire basement flooded with sewage water and her dry cleaning was submerged in the water. When she contacted Phillimore, he immediately returned her call. Butterbaugh again called Phillimore and Butterbaugh testified that he told her she had to clean up the basement and pay to replace her items. Butterbaugh stated that Phillimore told her to grab a mop, put on a pair of boots, and get down in the basement to clean it up. However, Phillimore did then send over someone to clean Butterbaugh's basement. Butterbaugh testified that her toilet again overflowed in December, but she did not notify Phillimore because her conversations with him were upsetting to her.

{¶9} With regards to the December rent, Butterbaugh testified that Phillimore told her if the rent was not in his bank account by the end of business on December 1, he would evict her. Butterbaugh stated she told him she was worried about the basement and would call the health department. Butterbaugh mailed the December rent check to Phillimore to an address she found on the auditor's website, which contained an incorrect P.O. number. Butterbaugh testified she received a three-day eviction notice on December 2, 2011 and attended the eviction hearing on December 20, 2011 without counsel. Butterbaugh moved out of the apartment on December 26, 2011. She cashed the check Phillimore sent to her in January of 2012 that was $338.04 of her $550 security deposit.

{¶10} On cross-examination, Butterbaugh testified that she had no evidence or proof that she established the online bill pay with her bank. Butterbaugh stated that her

rent was due on December 1st and that since the check was not to Phillimore on December 1st, the rent was late. Butterbaugh testified she knew she had a responsibility to get the check to Phillimore on December 1st. Butterbaugh stated she mailed the check to Phillimore on December 1st, even though Phillimore specifically told her if she did not have the check to him at the close of business on December 1st, he would move forward with an eviction complaint. Butterbaugh acknowledged that if she mailed the check on December 1st, Phillimore would not receive it on December 1st. Butterbaugh agreed that Phillimore's name, address, and phone number were on the back of the lease, but stated that she did not know they were on the back of the lease until the eviction hearing. Despite the fact she knew Phillimore's phone number, Butterbaugh did not call to ask his address when sending the December rent check. Butterbaugh testified that when she complained to Phillimore, he would attempt to take care of the issue the same day. Butterbaugh stated she received the return of the security deposit, but did not receive notice of the garnishment hearing.

{¶11} Butterbaugh rested after her testimony. Phillimore made a motion for a directed verdict on all the counterclaims and the trial court took this motion under advisement.

{¶12} Phillimore testified that he has been buying, selling, and managing rental properties for twenty years and has never evicted a tenant prior to Butterbaugh. Phillimore stated that after Butterbaugh called him about the apartment, they both went through the apartment and she filled out the lease application. After Phillimore approved Butterbaugh as a tenant, he told her that the rent was due on the first of the month, that she could not have any pets, that she was responsible for paying the

utilities, and that he would take care of the lawn and snow plowing. Phillimore testified that, while Butterbaugh was standing right next to him, he flipped over the lease and wrote his name, address, and phone number on the back of the lease and informed her that if she needed to contact him or send a rent check, she should use the information he wrote on the back of the lease. Butterbaugh also wanted a washer and dryer, and, although Phillimore did not usually do this, he told her he would get a washer and dryer and put her on a payment plan of an extra $50 every month until the washer and dryer were paid in full. The parties signed a separate statement indicating Butterbaugh would pay an additional $50 monthly for the washer and dryer in excess of the $550 rental payment. Phillimore approved Butterbaugh's request to move in early on October 20th for a pro-rated fee of $200.

{¶13} Phillimore testified that when Butterbaugh gave him the check for the security deposit, she did not tell him to hold the check for a couple of days. Phillimore did not receive the November rent check on November 1st, so he called Butterbaugh who was "kind of snippy" and when he asked her to write another check, she told him he would have to wait for the other check to be returned to her. Phillimore received the November rent check on November 5th after Butterbaugh called and told him he would have to pick it up from her apartment. When Phillimore did not get the December rent check in his December 1st mail, he called Butterbaugh and told her the rent was due before the close of business or he was going to start eviction proceedings. Phillimore testified Butterbaugh called him a bully and that he felt like he had to fight for rent checks every month and it would only get worse. Phillimore received the rent check on December 3rd, but did not open the envelope.

{¶14} When Butterbaugh called in October about the toilet backing up, Phillimore called Roto-Rooter the same day to snake the drain. Phillimore stated that after a downpour on November 28th, Butterbaugh's neighbors complained about their drains being slow, so he called a plumbing service to snake out the water lines in Butterbaugh's basement because that is where the clean-out was. Phillimore testified there was approximately ½ inch of water in Butterbaugh's basement after the heavy rain and it was rainwater, not sewer water. Phillimore was present when they cleaned the lines and saw them pulling out tampons and wet wipes out of the lines. The plumber had to return the next day to jet the line due to the material in the lines and Phillimore stated Butterbaugh's dirty clothes were in the same place as when they snaked the drain. Phillimore testified that when he told Butterbaugh what they found in the lines she told him he was "getting personal." Butterbaugh wanted Phillimore to clean up the residue and he told her it was just rainwater and he was not going to clean up a little bit of rainwater. However, he later changed his mind and sent someone over to clean the basement. Phillimore denies telling Butterbaugh to put her boots on and learn what it means to be a woman.

{¶15} Phillimore testified that he has never evicted anyone in twenty years and has accepted late rent payments previously if the tenant gave him a courtesy call. Phillimore stated that he did not evict Butterbaugh because she complained of the problems in the apartment, but evicted her because of her late rent payments and because he felt like collecting rent each month from her was a continuous struggle.

{¶16} On cross-examination, Phillimore testified that he did not check to see whether Butterbaugh's bank sent the November check to the wrong address. Further,

that he did not penalize her for the late November payment. At the conclusion of the trial, defense counsel conceded that he could not prove the consumer sales practices act counterclaim.

{¶17} On December 13, 2013, the magistrate issued a decision on the remaining counterclaims. The magistrate found that Phillimore's motion for directed verdict was inappropriate procedurally for a non-jury trial, that the proper motion is a motion for a Rule 41(B)(2) dismissal, and the magistrate had to determine whether Butterbaugh proved each of her counterclaims by a preponderance of the evidence. With regards to the retaliatory eviction claim, the magistrate determined that each party presented evidence in support of their theory as to why Phillimore evicted Butterbaugh, the retaliatory motive of not correcting the water problems versus her consistently failing to make timely rent payments and that the parties' testimony was in direct conflict with each other. The magistrate concluded Phillimore was the more credible witness. On Butterbaugh's wrongful eviction claim, the magistrate found that the rental agreement expressly states the monthly rent is due and owing on the first of the month and also that the actions of the parties clearly indicate Butterbaugh knew her rent was due on the first day of the month. The magistrate also found against Butterbaugh on her wrongful eviction claim because she did not request a stay of the municipal court's writ of restitution and did not appeal from that decision.

{¶18} On Butterbaugh's claim for wrongful seizure of a security deposit, the magistrate found Butterbaugh did not comply with the terms of the lease agreement by failing to pay her rent timely and thus she is not entitled to the return of any of the security deposit. With regards to Butterbaugh's wrongful garnishment or abuse of

process claim, the magistrate found that the prior proceeding in the Mansfield Municipal Court was not wrongful, not retaliatory, not malicious, and Phillimore had probable cause to file the action.

{¶19} Butterbaugh filed objections to the magistrate's decision on December 27, 2013. The trial court overruled Butterbaugh's objections on March 17, 2014. Butterbaugh appeals the March 17, 2014 judgment of the Richland County Common Pleas Court and assigns the following as error:

{¶20} "I. THE COURT BELOW ERRED IN FINDING THAT THE LANDLORD HAD A RIGHT TO EVICT THE TENANT FOR LATE PAYMENT BECAUSE RENT WAS ACTUALLY PAID TIMELY AS A MATTER OF LAW. ACCORDINGLY, THE COURT ALSO ERRED IN DISMISSING THE TENANT'S CLAIM FOR WRONGFUL EVICTION.

{¶21} "II. THE COURT BELOW ERRED IN FINDING THAT THE LANDLORD HAD A RIGHT TO WITHHOLD ANY PORTION OF THE SECURITY DEPOSIT.

{¶22} "III. THE COURT BELOW ERRED IN FAILING TO HOLD THE GARNISHMENT OF THE TENANT'S WAGES PROCEDURALLY WRONGFUL. THE 15-DAY DEMAND LETTER AND THE WAGE GARNISHMENT FILED BY THE LANDLORD SHOW THAT HE SENT THEM TO AN OLD ADDRESS AFTER HE HAD LEARNED OF THE TENANT'S NEW ADDRESS. IT WAS THUS ERROR TO DISMISS THE CLAIM FOR ABUSE OF PROCESS BECAUSE THE LANLORD'S KNOWING USE OF THE WRONG ADDRESS DEFEATED THE PROCEDURAL PROTECTIONS FOR DEBTOR-WAGE EARNERS PROVIDED BY OHIO'S WAGE GARNISHMENT LAW.

{¶23} "IV. GIVEN THAT THE LANDLORD DISMISSED HIS CLAIM FOR MONEY AT THE BEGINNING OF THE TRIAL, THE COURT BELOW ERRED IN DISMISSING THE TENANT'S CLAIM FOR ABUSE OF PROCESS."

*Civil Rule 41(B)(2) Standard of Review*

{¶24} Civil Rule 41(B)(2) permits a defendant in nonjury action to move for dismissal of the action after the close of the plaintiff's case. Dismissals under Civil Rule 41(B)(2) are similar in nature to a directed verdict in jury actions; however, because a Civil Rule 41(B)(2) dismissal is used in nonjury actions, it requires the trial court and reviewing court to apply different tests. See *Central Motors Corp. v. Pepper Pike*, 63 Ohio App.2d 34, 409 N.E.2d 258 (8th Dist. 1979). Civil Rule 41(B)(2) specifically provides that the trial court may consider both the law and the facts. Therefore, under the rule, the trial judge as the trier of fact does not view the evidence in a light most favorable to the plaintiff, but instead actually determines whether the plaintiff has proven the necessary facts by the appropriate evidentiary standard. See *L.W. Shoemaker, M.D., Inc. v. Connor*, 81 Ohio App.3d 748, 612 N.E.2d 369 (10th Dist. 1992); *Harris v. Cincinnati*, 79 Ohio App.3d 163, 607 N.E.2d 15 (1st Dist. 1992). Even if the plaintiff has presented a prima facie case, dismissal is still appropriate where the trial court determines that the necessary quantum of proof makes it clear that plaintiff will not prevail. *Fenley v. Athens Cty. Genealogical Chapter*, 4th Dist. No. 97CA36, 1998 WL 295496 (May 29, 1998), citing 3B Moore, Federal Practice (1990), Paragraph 41.13(4). Where the plaintiff's evidence is insufficient to sustain plaintiff's burden in the matter, the trial court may dismiss the case. *Levine v. Beckman*, 48 Ohio App.3d 24, 548 N.E.2d 267 (10th Dist. 1988). However, if the judge finds the plaintiff has proven the relevant

facts by the necessary quantum of proof, the motion must be denied and the defendant is required to put on evidence. *Central Motors Corp., supra.*

**{¶25}** A trial court's ruling on a Civil Rule 41(B)(2) motion will be set aside on appeal only if it is erroneous as a matter of law or against the manifest weight of the evidence. *Ogan v. Ogan*, 122 Ohio App.3d 580, 702 N.E.2d 472 (12th Dist. 1997). As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base its judgment. *Cross Truck Equip. Co. v. The Joseph A. Jeffries Co.*, 5th Dist. No. CA5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

I.

**{¶26}** Butterbaugh argues the trial court erred as a matter of law by dismissing her claim for wrongful eviction because the rent was paid timely. She argues the lease does not state the rent due date each month and that the most logical interpretation of the lease is that the tenant can pay $600 any day of the month for rent, but to get the $50 discount the tenant must pay on or before the first of the month. We disagree.

**{¶27}** R.C. 5321.15(A) provides that no landlord may initiate any act, including exclusion from the premises or threat of an unlawful act, against a tenant to recover possession of the premises other than what is provided in R.C. Chapters 1923, 5303, and 5321. R.C. 5321.03(A) provides that a landlord may bring an action under Chapter

1923 of the Revised Code for possession of the premises if: (1) the tenant is in default in the payment of rent * * *.

**{¶28}** Ohio law recognizes the contractual nature of a lease. See *Bevy's Dry Cleaners & Shirt Laundry, Inc. v. Streble*, 2 Ohio St.2d 250, 208 N.E.2d 528 (1965). "Only when the language of a contract is unclear or ambiguous * * * will extrinsic evidence be considered in an effort to give effect to the parties' intentions. * * * When the contract terms are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Shifrin v. Forest Enterprises, Inc.*, 64 Ohio St.3d 365, 1992-Ohio-28, 597 N.E.2d 499. Common words in a contract will be given their ordinary meaning "unless manifest absurdity results, or unless some other meaning is clearly evidenced form the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978). If the terms of the contract are determined to be clear and unambiguous, the interpretation of the language is a question of law. *State ex rel. Parsons v. Fleming*, 68 Ohio St.3d 509, 1994-Ohio-172, 628 N.E.2d 1377.

**{¶29}** In this case, the plain language used in the lease clearly provides that Butterbaugh was obliged to pay rent on the first of each month as the rental agreement states that the rent is paid on a monthly basis and states that it begins on the 1st day of November 2011. Giving these words their common, ordinary meaning, the terms of the contract are clear and unambiguous that the rent is due and owing on the first of the month.

**{¶30}** However, even if we were to find the terms of the lease ambiguous, we find there is competent and credible evidence in the record to support the trial court's

conclusion that both parties understood Butterbaugh's rent was due on the first day of the month.  When terms of an agreement are ambiguous, parol evidence may be used to explain the understanding of the parties at the time the agreement was entered into. See *Ohio Crane Co. v. Hicks*, 110 Ohio St. 168, 143 N.E. 388 (1924).  If we determine a contract to be ambiguous, we must decide the meaning of the terms in the contract and this determination is a question of fact.  *Walter v. Agoston*, 12th Dist. Warren No. CA2003-03-039, 2004-Ohio-2488.

**{¶31}**  In this case, Butterbaugh testified that she asked Phillimore to move in early on October 20th and pay the pro-rated amount of $200.  On cross-examination, Butterbaugh stated that her rent was due on December 1st and that since the check was not to Phillimore on December 1st, the rent was late.  Butterbaugh futher testified that she knew she had a responsibility to get the check to Phillimore on December 1st. Further, after Phillimore approved Butterbaugh as a tenant, he told her that the rent was due on the first of the month, that she could not have any pets, that she was responsible for paying the utilities, and that he would take care of the lawn and snow plowing. Accordingly, we find the record contains sufficient credible evidence to support the trial court's conclusions on the meaning of the language contained in the lease.

*Nominal Breach*

**{¶32}**  Butterbaugh further argues that even if the rent was due on the 1st of each month, her late payment was not a breach of the lease because it is a nominal or technical departure from the lease agreement and she has substantially performed the contact pursuant to *Burlington Resources Oil & Gas Co. v. Cox*, 133 Ohio App.3d 543, 729 N.E.2d 398 (4th Dist. 1999).  We disagree.

{¶33} "A party does not breach a contract when that party substantially performs the terms of the contract * * * [n]ominal, trifling, or technical departures from the terms of a contract are not sufficient to breach it." *Id.* at 548. A breach is material if it is essential to the purpose of the contract. *Software Clearing House, Inc. v. Intrak, Inc.*, 66 Ohio App.3d 163, 583 N.E.2d 1056 (1st Dist. 1990). While generally the time of performance of a contract may be a technical departure from the terms, "when the parties have included an express stipulation of time then the time of performance is of the essence of the contract." *Brown v. Brown*, 90 Ohio App.3d 781, 630 N.E.2d 763 (11th Dist. 1993). A court can also find that such a requirement is implied from the nature of the contract itself. *Id.*; *Gardner v. Hidden Harbour Partners*, 6th Dist. Lucas No. L-97-1182, 1997 WL 799710 (Dec. 31, 1997).

{¶34} In this case, the lease expressly states a time for performance so "time is of the essence" by agreement. Butterbaugh was obligated to pay her rent by the first of each month. Further, the nature of the contract itself, a residential lease agreement with a definite monthly rent amount and due date, implies that time is of the essence. Accordingly, because Butterbaugh's failure to pay rent on time is more than a "nominal, trifling, or technical" departure from the terms of the lease, she did not substantially perform her obligations under the lease.

*Butterbaugh's Remaining Arguments*

{¶35} Butterbaugh also briefly lists other reasons as to why her rent was not late, including that the lease gave Phillimore no right to evict for rent paid one day late, that since she paid $50 more than the rent owing the unconscionable late fee was actually tendered by Butterbaugh, that she actually prepaid her rent in light of the

amount she had already paid Phillimore, that the delay was caused by Phillimore's failure to comply with R.C. 5321.18(A) which requires the lease to contain the landlord's name and address, and that she timely mailed the rent to him to an address she obtained from the auditor's website.

{¶36} We find all of these contentions to be clearly without merit based upon the evidence presented, including the testimony of Butterbaugh herself. Regarding her claims that she actually paid the late fee and that she prepaid the rent in light of the amount paid, Butterbaugh and Phillimore both testified that they made a separate agreement for Butterbaugh to pay an additional $50 per month for the washer and dryer and both testified that they agreed to early entry on October 20th as requested by Butterbaugh for the pro-rated amount of $200. Butterbaugh never testified that the $50 additional she tendered each month was for anything other than the washer and dryer fee and there is no indication in any of the evidence presented that the $200 paid for early entry in October was any sort of pre-payment for November or December. Butterbaugh never testified that she paid the late fee and Phillimore testified she was not subject to the late fee.

{¶37} Butterbaugh argues that due to Phillimore's failure to provide her with his address pursuant to R.C. 5321.18(A), she was forced to acquire an incorrect address from the auditor's website. While Butterbaugh testified that she did not see the name and address on the back of the lease until the eviction hearing, there is no dispute that this information was on the back of the lease. R.C. 5321.18(A) requires that the written rental agreement for residential premises contains the name and address of the owner and there is no dispute that Phillimore's name, address, and phone number were on the

back of the rental agreement in accordance with the statute. Phillimore testified that when he wrote his address on the lease, he told Butterbaugh to send any rent checks to that address. Butterbaugh acknowledges she had Phillimore's phone number but did not call him to inquire about his address.

{¶38} Butterbaugh fails to cite any legal support for her contention that the lease had to contain a provision that Phillimore had the right to evict Butterbaugh for rent paid one day late for him to be able to evict her. Phillimore's power to evict is vested in the Ohio Revised Code. Accordingly, none of the reasons listed by Butterbaugh are supported by the law or evidence as reasons why her rent was not late.

*Preservation of Butterbaugh's Wrongful Eviction Claim*

{¶39} Finally, we find Butterbaugh failed to preserve her wrongful eviction claim. In *Keesey v. Superior Mobile Homes, Inc.*, 5th Dist. Tuscarawas No. 2000AP80057, 2001 WL 293253 (March 20, 2001), we found that where an appellant never took up residence in the home after the writ of restitution, failed to request a stay of the municipal court's writ of restitution, and failed to appeal from that decision, there was no legal basis to support the claim for wrongful eviction. Here, though Butterbaugh filed a Rule 60(B) motion with regards to Phillimore's second cause of action for damages, Butterbaugh did not seek a stay or appeal the Mansfield Municipal Court's judgment of eviction or writ of restitution. Like in *Keesey*, Butterbaugh never again took up residence in the home after the writ of restitution went into effect. Though Butterbaugh attempts to distinguish this case from *Keesey* by stating she was current in her rent, as discussed above, we find that Butterbaugh was not current in her rent.

{¶40} Based on the above, Butterbaugh's first assignment of error is overruled.

II.

**{¶41}** Butterbaugh asserts that Phillimore wrongfully withheld a portion of her security deposit. It is undisputed that Butterbaugh left the apartment on December 26, 2011 and, on January 23, 2012, Phillimore returned $338.04 of her $550.00 security deposit. Butterbaugh cashed the check. As specifically noted by Butterbaugh in her brief, her second assignment of error is premised upon the success of her first assignment of error and the amount deducted from the security deposit was fair if Phillimore had the right to evict Butterbaugh. In Assignment of Error I, we determined Phillimore had a right to evict Butterbaugh based upon her failure to timely pay her rent. Accordingly, Butterbaugh's second assignment of error is overruled.

III. & IV.

**{¶42}** Butterbaugh finally argues that the court below erred in failing to find that the garnishment of her wages was wrongful because the 15-day demand letter and the wage garnishment filed by Phillimore were sent to an old address and because Phillimore dismissed his claim for damages at the beginning of the trial.

**{¶43}** As noted by the trial court, Butterbaugh concludes that for this particular counterclaim, wrongful garnishment, abuse of process, and malicious prosecution are one and the same. In order to state a cause of action for this counterclaim, Butterbaugh must prove four elements: (1) malicious institution in prior proceedings against the plaintiff by defendant; (2) lack of probable cause for the filing of the prior lawsuit; (3) termination of the prior proceedings in the plaintiff's favor; and (4) seizure of the plaintiff's person or property during the course of the prior proceedings. *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St.3d 264, 1996-Ohio-189, 662 N.E.2d 9.

Actions for malicious prosecution have been met with disfavor by Ohio courts, which have allowed recovery only when a plaintiff fully complies with the requirements of such an action. *Harvey v. Republic Services of Ohio*, 5th Dist. Stark No. 2007 CA 00278, 2009-Ohio-1343. Thus, a plaintiff's failure to establish any one element by a preponderance of the evidence is fatal to a malicious prosecution claim. *Id.*

{¶44} As stated by Butterbaugh in her brief, assignments of error III and IV are premised on the success of her first assignment of error because if we determine there is no basis for Phillimore to have sued Butterbaugh for December's rent, the garnishment of her wages is also wrongful.

{¶45} Here, we find the trial court did not err in finding that the prior proceeding was not malicious and that Phillimore had probable cause to file the action. As discussed above, Phillimore had a valid basis to have sued Butterbaugh for December's rent. The garnishment was set in motion through the use of the court pursuant to a judgment in Phillimore's favor and limited the amount to a sum of back rent and court costs. There is competent and credible evidence to support the trial court's determination that Phillimore's initiation of the proceeding was not malicious as Phillimore testified he initiated the proceedings because Butterbaugh was late in paying her rent. Because Phillimore proceeded under a lawfully issued eviction, writ of restitution, and judgment for damages, the municipal court's subsequent decision to vacate the judgment on damages does not operate to retroactively transform a lawful act into an unlawful one. See *Kessey v. Superior Mobile Homes, Inc.*, 5th Dist. Tuscarawas No. 2000AP080057, 2001 WL 293253 (March 20, 2001). Accordingly, the

trial court property dismissed Butterbaugh's wrongful garnishment claim.  Butterbaugh's third and fourth assignments of error are overruled.

{¶46}  Based on the foregoing, appellant's assignments of error are overruled. The March 17, 2014 judgment entry of the Richland County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur