[Cite as *Carmen v. Baier*, 2019-Ohio-676.]

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Jesse S. Carmen, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 17AP-443 |
| v. | : | (C.P.C. No. 15CVH-3506) |
| Caren S. Baier, et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

**Rendered on February 26, 2019**

**On brief:** *Law Offices of Stanley B. Dritz, Stanley B. Dritz,* and *D. Chadd McKitrick*, for appellant. **Argued:** *Stanley B. Dritz* and *D. Chadd McKitrick.*

**On brief:** *Law Offices of James P. Connors*, and *James P. Connors*, for appellees. **Argued:** *James P. Connors.*

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Plaintiff-appellant, Jesse S. Carmen, appeals a May 22, 2018 judgment of the Franklin County Court of Common Pleas granting the Civ.R. 41(B)(2) motion to dismiss of defendants-appellants, Caren S. Baier ("Baier"), Ardent, Ltd. dba Ardent Realty ("Ardent"), and Doe Corporation I dba Ardent Realty, made after Carmen had completed the presentation of his case in a trial to the bench. For the following reasons, we affirm the decision of the trial court.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} This matter arose over a dispute between Carmen, a first time home buyer, and Baier, a real estate broker licensed by the State of Ohio, over a $15,750 commission the seller paid to Baier and her firm, Ardent Realty, when Carmen closed on the purchase of a condominium (hereinafter referred to as "Unit 512") on December 31, 2014. Carmen

asserts that Baier and he had entered into an oral agreement under which Baier and Ardent Realty would act as a straw person to receive the $15,750 commission and then transfer the money to Carmen, so as to reduce the price Carmen ultimately paid for Unit 512. Baier and Ardent Realty received the commission on closing but did not transfer any of it to Carmen. Carmen filed suit to obtain the $15,750, alleging that Baier and Ardent Realty's sole purpose in the underlying real estate transaction was to forward the commission to him.

{¶ 3} The following facts are not in dispute. On October 1, 2014, Carmen went alone to look at condominium units offered for sale by NWD 300 Spring LLC ("the seller") at North Bank Park. Accompanied only by the seller's agent, Erin Uritus, Carmen viewed Unit 512, which he immediately decided to buy. The same day, he filled out and signed a real estate purchase agreement to purchase Unit 512 for $525,000 from the seller. Carmen listed a friend, Chad Carroll ("Carroll"), as his real estate agent on the purchase contract, even though he had neither requested nor received Carroll's permission to do so. Carmen has been unabashedly candid that his reason for listing Carroll as his real estate salesperson was to have Carroll collect the $15,750 commission on the sale of Unit 512 and subsequently transfer it to Carmen, who would use it to offset the purchase price and/or closing costs.

{¶ 4} It also is undisputed that this was Carmen's first real estate transaction and that he did not consult a real estate professional, an attorney, or anyone else before signing the purchase agreement and giving the seller a $21,000 check as a deposit on Unit 512. As of October 1, 2014, Carmen did not know Baier or Ardent Realty.

{¶ 5} Carmen subsequently apprised his parents of his intention to buy Unit 512. Concerned about Carmen's significant purchase despite his lack of familiarity with the real estate market, they suggested that he contact Baier, a licensed real estate broker in the State of Ohio and an acquaintance of Carmen's mother.

{¶ 6} On or about October 19, 2014, Carmen contacted Baier. Carmen emailed her the purchase agreement and thanked her for her assistance. Carmen and Baier subsequently toured Unit 512 together, and Baier agreed to offer some advice to Carmen as a favor to his parents.

{¶ 7} Carmen alleged that Baier and he entered into an oral agreement in which Baier agreed to participate as Carmen's real estate salesperson and broker in connection with his purchase of Unit 512, earn the three percent commission from the transaction, and

then transfer the commission to Carmen.  Carmen told Baier he would return some of the commission to her for her time and effort in transferring the commission to Carmen.

{¶ 8}  Carmen asserts that every party involved in the transaction, including the seller and Carmen's lender, had full knowledge of Carmen and Baier's oral agreement. Carmen states that Baier and he had several conversations, some including the seller's agent and Carmen's lender, on how to effectuate a transfer of the commission to Carmen. The seller and Carmen's lender rejected suggestions that the seller reduce the price of Unit 512 by the amount of the commission or return the amount of the commission to Carmen after the closing.  Carmen alleges that, ultimately, Baier agreed to accept the commission and transfer it to Carmen.  Carmen claims that neither his lender nor the seller cared about the agreement between Carmen and Baier, so long as the commission was not reflected as a sales deduction or price reduction on the closing statement.  According to Carmen, Baier informed him that her only concern about the commission was receiving it before December 31, 2014 because of tax implications for her.

{¶ 9}  On December 31, 2014, Carmen closed on Unit 512 and the seller paid the commission to Baier and Ardent Realty via the Stewart Title Company.  Soon after, Carmen contacted Baier to ask when she would be transferring the commission to him.  He states that she made several false, misleading, and contradictory statements as to why she could not transfer the commission to him.  Ultimately, Baier and Ardent Realty did not transfer any portion of the commission to Carmen.

{¶ 10} On April 24, 2015, Carmen commenced this action against Baier and Ardent Realty, alleging breach of the oral agreement, unjust enrichment, detrimental reliance, negligence, breach of fiduciary duty, and fraud.  He alleged he had been damaged in the account of the commission ($15,750), in addition to other economic damages, as a direct and proximate cause of the actions and conduct of Baier and Ardent Realty.

{¶ 11} All parties filed motions for summary judgment on July 22, 2016.  The trial court overruled the parties' motions for summary judgment on December 23, 2016, and the matter proceeded to trial.

{¶ 12} Carmen's claims were tried to the bench May 15 and 16, 2017.  At the conclusion of Carmen's case, Baier and Ardent Realty moved to dismiss pursuant to Civ.R.

41(B)(2) on the basis that R.C. 4735.21 barred Carmen from prosecuting an action for a commission arising from a real estate transaction.

{¶ 13} The trial court, after hearing arguments from the parties and asking questions to obtain clarification of the arguments, ruled from the bench, finding that Carmen was not entitled to the commission and granting defendants-appellees' motion. The trial court announced the following findings from the bench:

> I have to say as I listened to the presentation of the evidence and the arguments of counsel, the well-settled legal principle that comes to mind is that any plaintiff who seeks recovery for damages must come to the court with clean hands, and in this instance Dr. Carmen does not come to this court with clean hands.
>
> Through his own testimony, [Carmen] concedes that the moneys at issue are moneys to which he understands that he was never entitled. That is the basis, that is the factual finding that this court will make, that Dr. Carmen concedes that he was never entitled to any of the commission funds.
>
> He concedes that at the time that he signed the unit purchase agreement, Chad Carrol was listed as the broker, and both Dr. Carmen and counsel on behalf of Dr. Carmen concede that there was no inducement listed in that sales contract that would have entitled him to receive commission on the sale of this particular property.
>
> * * *
>
> I think that Dr. Carmen's decision to involve Ms. Baier was based on a request made by his parents because they were displeased with a personal choice that he had made.
>
> I believe that at some point there was consideration by Ms. Baier to attempt to give any commission back to Dr. Carmen. I find it curious in the voice message that Ms. Baier left that she would say ["]legally what were are attempting to do is not legal, but I have talked with my accountant and I think that there is a way that we can circumvent the illegality of what it is that you are asking me to do.["]
>
> So there is a wholesale acknowledgement on both sides of the equation that what was asked post signing the purchase agreement was not permitted by law, and I think that that conclusion is buttressed by the fact that 4735.21 states, ["]no cause of action shall arise on behalf of any person against a

broker for not paying an assignee or transferee any portion of such an assignment or transfer.["]

That statutory language is not specific to a salesperson. It is not specific to a real estate sales person. It is not specific to a foreign real estate dealer. It says ["]no cause of action shall arise on behalf of any person.["] That would include Dr. Carmen, and, candidly, based on the fact that Dr. Carmen concedes that this was going to be a windfall for him, the court is unclear on what damages he has actually sustained that would necessitate this court make him whole.

He has conceded that this whole undertaking was an attempt to have Mr. Carrol initially help him, and then in turn he would in some way help Mr. Carrol by providing him with a portion of the commission proceedings.

There is a Tenth Appellate District case, Group One Realty versus Minnich, decided on May 29, 1997. In that case the Tenth District explicitly stated that 4735.21 does require that a party suing to collect a real estate commission allege and prove, in addition to the basic elements of its claim, that it is licensed as a real estate broker.

There is no evidence before this court, no testimony that it has received that Dr. Carmen was licensed in any way as a real estate broker; which undercuts in this court's opinion his ability to sue or to assert claims for a commission to which he, again, concedes he was not entitled.

The court is disinclined to make legal what is clearly in this court's opinion illegal, and what Dr. Carmen has conceded is illegal, and what Ms. Baier has stated is legally illegal.

There is no one here who believes that what was being asked was permitted under the law.

Ms. Uritus testified that this kind of agreement has never happened in the more than ten years that she worked in this industry.

And there were concessions made or attempts made for whatever reason to accommodate Dr. Carmen's request, based on, I think, an attempt to develop a relationship with Mrs. Carmen related to another property.

I think – I don't know that I will ever get clarity on that, but what I do know is that I have had a concession from counsel

that any inducement must have been included on the date that the sales contract was signed. That date is October of 2014, which would mean that the person who would have a responsibility of ensuring that that inducement was included would have been Mr. Carrol, if Dr. Carmen had actually believed that Mr. Carrol was serving as his broker, and he has conceded that he did not believe that. He was simply listing his name out of convenience.

There is no subsequent amended purchase agreement which identifies Ms. Baier as the new broker.

Ms. Uritus testified that there is no amended purchase agreement, and so this court is not going to create a legal construct or this court is not going to interpret the documents that have been signed with extrinsic evidence. That is a clear violation of what parol evidence requires.

I am also persuaded by the HUD-1 statement to which Dr. Carmen affirmed its accuracy. That document identified Ardent Realty as the entity and Ms. Baier as the individual who would be entitled to the commission.

All of this extrinsic evidence in terms of transfer of e-mails and Ms. Baier's attempt to release a commission cannot obviate or displace what was contained within the documents that were signed by the parties. I don't know why anybody in the room thought any of this was a good idea. It was the worst idea imaginable, and the court finds that it is a clear violation of well-settled law.

(Sic passim.) (Tr. Vol. 2 at 418-23.)

{¶ 14} The trial court then announced its conclusion from the bench:

And so for those reasons, based on the facts that have been presented to this court, based on the law that this court believes is binding, there is no set of facts that entitled Dr. Carmen to any relief as to any of the claims listed, which include breach of oral agreement, unjust enrichment, breach of fiduciary duty as a real estate broker, negligence, fraudulent misrepresentation, negligent misrepresentation, and inability of an individual defendant to represent a limited liability company interest.

There are no facts, there is no law that supports any of the claims asserted by the plaintiff.

And so then pursuant to 41(b)(2), the court is going to grant the defendant's motion to dismiss this matter with prejudice.

> That is the court's ruling. I will reduce it to a writing and then
> file it with the court.

(Sic passim.) (Tr. Vol. 2 at 423-24.)

{¶ 15} Carmen's counsel immediately requested that the trial court provide its findings of facts and conclusions of law in writing, and the trial court agreed. Carmen's counsel subsequently withdrew his oral request and asked that the trial court simply issue a judgment entry dismissing the case with prejudice and taxing costs to Carmen.

{¶ 16} On May 22, 2017, the trial court entered judgment granting defendants-appellees' motion for dismissal, consistent with its ruling on the record. The judgment entry also memorialized Carmen's post-trial withdrawal of his request that the trial issue findings of facts or conclusion of law, thus explaining why the trial court did not reduce its findings or conclusions to writing.[1]

{¶ 17} On June 21, 2017, Carmen appealed the trial court's May 22, 2017 judgment.

## II. ASSIGNMENT OF ERROR

{¶ 18} Carmen presents a single assignment of error for our review:

> The trial court erred in granting appellees' motion to dismiss
> pursuant to Ohio Civ.R. 41(B)(2).

## III.  LAW AND DISCUSSION

### A.  Standard of Review

{¶ 19} The trial court resolved Carmen's complaint by dismissing it pursuant to Civ.R. 41(B)(2) after Carmen had presented his case in chief in a trial to the bench. Civ.R.

---

[1] The judgment entry stated:

> On May 15, 2017, this matter came before the Court for a jury-waived trial on the plaintiff's claims. At the conclusion of the plaintiff's presentation of evidence, the defendants moved for dismissal pursuant to Civ.R. 41(B)(2). After careful consideration of the plaintiff's evidence, the Court determined that, upon the facts and the law, the plaintiff had shown no right to relief. At that time, the plaintiff made an oral request for the Court to issue findings of fact and conclusions of law. However, in a May 18, 2017 email to the Court's staff attorney, plaintiff's counsel withdrew his oral request and asked that the Court simply issue a judgment entry dismissing the case with prejudice and taxing costs to the plaintiff. Consistent with the Court's ruling on the record, the defendants' motion for dismissal pursuant to Civ.R. 41(B)(2) is hereby **GRANTED**. Costs to the plaintiff.
>
> **IT IS SO ORDERED.**

(May 22, 2017 Entry at 1.)

41(B)(2) states:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Civ.R. 52 if requested to do so by any party.

{¶ 20} In *L.W. Shoemaker, M.D., Inc. v. Connor*, 81 Ohio App.3d 748, 752 (10th Dist.1992), this Court stated:

> Thus, pursuant to Civ.R. 41(B)(2), if a case is tried to the court, rather than before a jury, the defendant may, after the plaintiff has presented his evidence and rested, move for a dismissal of the plaintiff's action on the ground that, upon the facts and law, the plaintiff has failed to show a right to relief. *Cent. Motors Corp. v. Pepper Pike* (1979), 63 Ohio App.2d 34, 48, 13 O.O.3d 347, 356-357, 409 N.E.2d 258, 270. The trial court, in determining whether the plaintiff has shown a right to relief, "is not required to review the evidence in the light most favorable to the plaintiff but is required only to determine whether the plaintiff has made out his case by a preponderance of the evidence." *Jacobs v. Bd. of Cty. Commrs. of Auglaize Cty.* (1971), 27 Ohio App.2d 63, 65, 56 O.O.2d 245, 246, 272 N.E.2d 635, 636.

Thus, even if a plaintiff has presented a prima facie case, dismissal still may be appropriate if the trial court finds that the evidence is insufficient to sustain the plaintiff's burden of proof. *Levine v. Beckman*, 48 Ohio App.3d 24 (10th Dist.1988). However, if the trial court finds the plaintiff has proven the relevant facts by the necessary quantum of proof, the motion must be denied, and the defendant must put on evidence in support of its case. *Cent. Motors Corp. v. Pepper Pike*, 63 Ohio App.2d 34 (8th Dist.1979).

{¶ 21} Furthermore, a trial court's ruling on a Civ.R. 41(B)(2) motion will be set aside only if it is erroneous as a matter of law or against the manifest weight of the evidence. *L.W. Shoemaker, M.D.* at 752, citing *Jacobs v. Bd. of Cty. Commrs. of Auglaize Cty.*, 27 Ohio App.2d 63, 65 (3d Dist.1971). The reviewing court neither weighs the evidence nor judges the credibility of the witnesses but determines "whether there is relevant,

competent, and credible evidence upon which the fact finder could base its judgment." *Phillimore v. Butterbaugh,* 5th Dist. No. 14CA32, 2014-Ohio-4641, ¶ 25, citing *Cross Truck Equip. Co. v. The Joseph A. Jeffries Co.,* 5th Dist. No. CA5758 (Feb. 10, 1982). "Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence." *Phillimore* at ¶ 25, citing *C.E. Morris Co. v. Foley Constr.,* 54 Ohio St.2d 279 (1978).

### B.  Assignment of Error

{¶ 22} Carmen's assignment of error challenges the trial court's conclusion that R.C. 4735.21 was determinative of this matter, arguing that the trial court misinterpreted and misapplied R.C. 4735.21 in finding that he was not entitled to relief.  Carmen further argues the trial court erred in relying on the parol evidence rule to not consider documentary evidence that substantiated his claims.  Finally, Carmen argues the trial court erred in holding that appellees had no fiduciary duty toward him.  Carmen asserts that he had "demonstrated by a preponderance of the evidence he was entitled to relief on his claims, and therefore, the trial court should not have granted the appellees' motion to dismiss." (Carmen's Brief at 12.)

{¶ 23} R.C. 4735.21 limits a prospective plaintiff's right of action with respect to certain moneys arising out of real estate transactions.  R.C. 4735.21 states:

> No right of action shall accrue to any person, partnership, association, or corporation for the collection of compensation for the performance of the acts mentioned in section 4735.01 of the Revised Code, without alleging and proving that such person, partnership, association, or corporation was licensed as a real estate broker or foreign real estate dealer. Nothing contained in this section shall prevent a right of action from accruing after the expiration of a real estate or foreign real estate license if the act giving rise to the cause of action was performed by a licensee prior to such expiration.
>
> No real estate salesperson or foreign real estate salesperson shall collect any money in connection with any real estate or foreign real estate brokerage transaction, whether as a commission, deposit, payment, rental, or otherwise, except in the name of and with the consent of the licensed real estate broker or licensed foreign real estate dealer under whom the salesperson is licensed at the time the sales person earned the commission. Nor shall any real estate salesperson or foreign

> real estate salesperson commence or maintain any action for a commission or other compensation in connection with a real estate or foreign real estate brokerage transaction, against any person except a person licensed as a real estate broker or foreign real estate dealer under whom the salesperson is licensed as a salesperson at the time the cause of action arose.
>
> A salesperson licensed under this chapter shall not sell, assign, or otherwise transfer the salesperson's interest in a commission or any portion thereof to an unlicensed person or entity. If a salesperson makes such assignment or transfer, the broker shall not pay the transferee or assignee any portion of the commission. No cause of action shall arise on behalf of any person against a broker for not paying an assignee or transferee any portion of such an assignment or transfer.

{¶ 24} This Court has held that R.C. 4735.21 does "require that a party suing to collect a real estate commission allege and prove, in addition to the basic elements of its claim, that it is licensed as a real estate broker." *Group One Realty v. Minnich*, 10th Dist. No. 96APG11-1563 (May 29, 1997). Nothing in the record persuades us to deviate from that holding here. Our review of the transcript of the May 15, 2017 trial reveals that Carmen failed to present any evidence that he has ever been licensed as a real estate broker. He is not, therefore, entitled to the three percent commission the seller paid to Baier and Ardent Realty, the real estate brokers of record.

{¶ 25} Having thoroughly reviewed the evidence presented by Carmen during his case in chief, we find that judgment of the trial court was supported by the evidence at the time the trial court terminated the proceeding in granting Baier's and Ardent Realty's joint Civ.R. 41(B)(2) motion.

{¶ 26} Therefore, we overrule Carmen's sole assignment of error.

## IV. CONCLUSION

{¶ 27} Based on the foregoing, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and HORTON, JJ., concur.