OPINION.
{¶ 1} Defendant-appellant/cross-appellee, Arena Management Holdings, LLC ("AMH"), appeals the summary judgment entered by the Hamilton County Court of Common Pleas in an eminent-domain case. Plaintiff-appellee/cross-appellant, the Board of Commissioners of Hamilton County, Ohio ("County"), also appeals the trial court's judgment.
 {¶ 2} In this case, we revisit the controversy that we addressed inCincinnati Entertainment Assoc., Ltd. v. Hamilton Cty. Bd. of Commrs.[1]
There, we affirmed the trial court's grant of a writ of mandamus requiring the County to file an appropriation action against AMH's predecessor-in-interest, Cincinnati Entertainment Associates ("CEA").[2]
In affirming the trial court's judgment, we held that CEA had demonstrated a property interest in parking and "staging" areas surrounding what was formerly known as Riverfront Coliseum and is now known as U.S. Bank Arena.[3] We also held that CEA had a property interest in access to the arena by publicly maintained structures and from public streets at a particular elevation.[4] In CEA, we explicitly refused to consider the issue of the distribution of the appropriation proceeds pending the filing of the mandated appropriation action.[5]
 {¶ 3} In this case, we address the trial court's disposition of certain issues concerning the renewal provisions of a parking lease and the effect of a clause in the lease concerning the distribution of appropriation proceeds. For the following reasons, we affirm the trial court's judgment.
 {¶ 4} Although we addressed the somewhat complex factual history of the case in CEA, a brief overview of those facts is helpful here. In the 1960s, the city of Cincinnati ("City") decided to build a stadium on the riverfront. To facilitate financing for the project, the City transferred the land in question to the County and then leased it back from the County in an agreement dated May 1, 1967. That lease was to expire on April 30, 2007, with the City reserving a right to renew the lease for a period of forty years.
 {¶ 5} In 1974, the City entered into a lease (the "parking lease") with another of AMH's predecessors-in-interest, the Cincinnati Coliseum Company. Under a 1975 amendment to the parking lease, the parties agreed to the following renewal provision: "Subject to the City's exercising its option to renew the County Lease, Tenant [Cincinnati Coliseum Company] shall have the option to renew this lease for an additional term of years not exceeding the renewal term exercised by City under the County lease upon conditions of such renewal as may be agreed upon between the parties hereto."
 {¶ 6} But the City and the County did not renew the 1967 lease. Instead, in 1996, the City and the County executed a termination of the lease pursuant to which control of the property returned to the County. Under the termination agreement and a related assignment agreement, the County assumed all of the City's rights and obligations under the 1967 lease, as well as the City's obligations under the parking lease. In 1997, the County and CEA executed a memorandum of lease stating that the parking lease was to expire "on April 30, 2007, with right of renewal." The memorandum further provided that "[s]hould any inconsistencies, alterations or omissions exist between this Memorandum of Lease and the Lease to which it refers [the parking lease], the provisions of the Lease shall govern."
 {¶ 7} The County ultimately demolished the parking and access areas surrounding U.S. Bank Arena to make way for the Great American Ball Park. After our decision in CEA, an appropriation proceeding was commenced in the trial court. Both the County and AMH filed motions for summary judgment.
 {¶ 8} In April 2003, the trial court issued an entry resolving the parties' motions for summary judgment. In its decision, the trial court held that the provisions of the parking lease did not prohibit AMH from recovering proceeds in the appropriation proceeding, and that AMH did not have a right to renew the parking lease beyond April 30, 2007. The trial court subsequently certified that there was no just reason to delay an appeal pursuant to Civ.R. 54(B).
 {¶ 9} In two related assignments of error, AMH now argues that the trial court erred in holding that it did not have the right to renew the lease. In a single assignment of error, the County argues, in its cross-appeal, that the trial court erred in holding that the terms of the lease did not prohibit AMH's recovery of appropriation proceeds. Because the County's assignment of error raises the threshold issue of whether AMH was entitled to any recovery, we address the cross-appeal first.
 {¶ 10} Pursuant to Civ.R. 56(C), a motion for summary judgment is to be granted only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and, with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.[6]
The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists, and once it has satisfied its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial.[7] This court reviews the granting of summary judgment de novo.[8]
 {¶ 11} In the case at bar, the facts are undisputed, and the controversy lies in the construction of the lease terms. The County argues that section 1305 of the 1974 lease operated as a waiver of AMH's right to receive any proceeds in an appropriation action. The language at issue is as follows: "It is understood and agreed that Tenant has no right to any part of the proceeds of any award made pursuant to the exercise of the power of eminent domain by an appropriating authority, and that in the event of a taking the County shall not be required to expend more than the total amount of the award, nor shall the City be required to contribute any funds toward any replacement, repair, restoration or reconstruction."
 {¶ 12} AMH argued, and the trial court held, that the quoted language contemplated a situation in which the City was the lessee, AMH was the lessor, and the County or another authority appropriated the land from the City. But because the County itself became the landlord, the trial court held that its direct taking of an easement interest from AMH rendered the waiver language inapplicable. We agree with the reasoning of the trial court.
 {¶ 13} First, it is evident from the lease language that the parties contemplated a situation in which the City, as landlord, would have property taken in an appropriation. The introductory language of the lease identified the City as the "Landlord" and the arena as the "Tenant." The waiver in question contemplated AMH or its predecessor invoking a derivative right as a "tenant" to compensation because of its relationship with its landlord, the City. The only restriction on the liability of the County was that it was not to expend any amount "more than the total amount of the award."
 {¶ 14} Moreover, the agreement was titled as a lease from "City of Cincinnati to Cincinnati Coliseum Company" and was executed by only the City and CCC. There was no indication that the County was intended to be a third-party beneficiary of any waiver contained in the lease, other than the limitation that it was not to expend more than the total award. The waiver, then, was in place for the benefit of the City, so that the tenant could not claim a portion of any proceeds that might be owed to the City in the event of an appropriation from the City.
 {¶ 15} But the City was not subject to an appropriation action as contemplated in the 1974 lease. At the time the access became unavailable to AMH, the City was no longer the landlord. The County, as owner of the real estate, took the easement interests directly from AMH. As we held inCEA, "CEA is not being damaged solely by the commissioners' breach of contract, but also by the commissioners' failure to perform the official acts they are under a clear legal duty to perform."[9] That clear legal duty, as we held in CEA, was to "appropriate property interests taken for the public good."[10] In holding that the County had directly impaired the property interests of AMH, we emphasized that "CEA has compensable interests in the three categories of easements that were taken" and that there was no adequate remedy at law.[11]
 {¶ 16} Our holding in CEA, then, recognized the distinction that the trial court made after the County had filed the appropriation action. The contractual waiver relating to AMH's leasehold interests did not function to extinguish AMH's rights against the County for easement interests that the County directly took. Those distinct rights — in the easement for parking and staging, for implied access from public streets, and for implied access from a certain elevation — were not affected by the waiver of AMH's right to share in appropriation proceeds with its former landlord. Accordingly, we overrule the County's sole assignment of error.
 {¶ 17} We turn now to AMH's appeal. In its two assignments of error, AMH contends that the trial court erred in denying, in part, its motion for summary judgment and in granting, in part, the motion of the County. Because the assignments raise similar issues, we address them together.
 {¶ 18} AMH contests the trial court's holding that the County's obligation to compensate AMH for the interests that were taken ended with the expiration of the lease in 2007. AMH argues that, pursuant to the lease, it was entitled to be compensated for an additional forty years' worth of its easement interest. While this court has held that the interests that the County appropriated were easements and not a leasehold interest, the parties agree that the temporal terms of the easement interests were concomitant with those of the lease.
 {¶ 19} AMH premises its argument on language in the lease regarding the renewal of the lease period. That language was as follows: "Subject to the City's exercising its option to renew the County Lease, Tenant shall have the option to renew this lease for an additional term of years not exceeding the renewal term exercised by City under the County Lease upon conditions of such renewal as may be agreed upon between the parties hereto." The trial court held that the language "[s]ubject to the City exercising its option to renew the County Lease" represented a condition precedent to AMH's ability to renew the lease. Because the City did not renew the lease and in fact executed a cancellation of the lease in 1996, the trial court held that any executory right to renew on the part of AMH had been extinguished by the failure of the condition precedent.
 {¶ 20} We find no error in the trial court's holding. A condition precedent is a condition that is to be performed before an agreement or a portion of an agreement between parties becomes operative.[12] A condition precedent calls for the performance of some act or the happening of some event upon which the contractual obligation depends.[13] If the condition precedent does not occur, a party is excused from performing under the agreement.[14]
 {¶ 21} Here, AMH's right to extend the lease agreement was explicitly conditioned upon the City's exercising its option to extend its agreement with the County. Because the City did not exercise that option, no right to renew devolved upon AMH. Had AMH or a predecessor-in-interest wished to make provision for renewal upon the cancellation of the lease between the City and the County, it could have negotiated such a provision. But because the contract provided for an AMH option only upon the stated condition, the failure of the condition prevented the vesting of AMH's option.
 {¶ 22} AMH, though, cites an assignment of rights and liabilities from the City to the County as proof that AMH had the option to renew. As part of the 1996 cancellation of the 1967 lease, the County assumed all of the City's "performance obligations and liabilities" under the parking lease. AMH argues that the County's assumption of the City's "obligations" under the parking lease included the exercise of the City's renewal option.
 {¶ 23} We find no merit in this argument. Only the most tortured construction of the various agreements would yield the result urged by AMH. The right of renewal reserved by the City in the parking lease was specifically denoted an "option," not an obligation of the City. There is nothing in any of the agreements requiring the City (or any other party) to renew the lease. Thus, even though the County assumed all of the City's obligations under the lease, the renewal of the lease was not such an obligation. Under these circumstances, we reject AMH's claim that the assignment of rights had any effect on the condition precedent set forth in the parking lease.
 {¶ 24} AMH cites several cases for the proposition that where a party prevents the occurrence of a condition precedent, the condition is no longer applicable. It argues that the County's failure to exercise the City's option to renew prevented the occurrence of the condition precedent and that AMH therefore retained its renewal right.
 {¶ 25} Again, we find no merit in this argument. As this court has previously held, a condition precedent is excused "where a party's breach
by nonperformance contributes materially to the nonoccurrence of a condition."[15] In the case at bar, AMH failed to present evidence that the failure of the condition precedent was caused by any breach on the part of the County. As we have already held, the County did not assume any obligation to exercise an option to renew the lease, and its failure to exercise the option was simply not a breach of any of the various agreements. Under these circumstances, the condition precedent was not excused, and the nonoccurrence of the condition precluded AMH's claim that it had retained option rights.
 {¶ 26} AMH next argues that the Memorandum of Lease executed in 1997 was proof that it had the right to renew the agreement. The memorandum, which was filed with the county recorder's office, provided that CEA had accepted the terms of the original lease, that the County had become the lessor, and that lease "expires on April 30, 2007, with right of renewal." AMH claims that the language "with right of renewal" indicated that the parties had waived any asserted conditions precedent. We are not persuaded.
 {¶ 27} As the County notes, the purpose of filing a memorandum of lease with the county recorder is merely to put others on notice that there are encumbrances on real property.[16] Here, the parties explicitly stated in the memorandum itself that they had recorded the memorandum "solely for the purpose of providing an instrument for recording." They further provided that "[s]hould any inconsistencies, alterations or omissions exist between this Memorandum of Lease and the Lease to which it refers, the provisions of the Lease shall govern." In light of this language, we reject the suggestion that the memorandum had any effect on the condition precedent set forth in the parking lease, and we hold that the failure of the condition precedent precluded AMH's assertion of a right to renew the lease.
 {¶ 28} Given our holding with respect to the failure of the condition precedent, we need not address the County's contention that the renewal provision of the parking lease was unenforceably vague or that it constituted an unenforceable agreement-to-agree. AMH's assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
Painter and Winkler, JJ., concur.
[1] (2001), 141 Ohio App.3d 803, 753 N.E.2d 884, jurisdictional motion overruled (2001), 92 Ohio St.3d 1441, 751 N.E.2d 481.
[2] See id. at 809, 753 N.E.2d 884.
[3] See id.
[4] See id.
[5] Id. at 816, 753 N.E.2d 884.
[6] See State ex rel. Howard v. Ferreri, 70 Ohio St.3d 587, 589,1994-Ohio-130, 639 N.E.2d 1189.
[7] See Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107,662 N.E.2d 264.
[8] Jorg v. Cincinnati Black United Front, 153 Ohio App.3d 258,2003-Ohio-3668, 792 N.E.2d 781, at ¶ 6, jurisdictional motion overruled (2003), 100 Ohio St.3d 1471, N.E.2d ___.
[9] CEA, supra, at 823, 753 N.E.2d 884.
[10] Id. at 821, 753 N.E.2d 884.
[11] Id. at 822, 753 N.E.2d 884.
[12] Mumaw v. Western Southern Life Ins. Co (1917), 97 Ohio St. 1,11, 119 N.E. 132; Troha v. Troha (1995), 105 Ohio App.3d 327, 334,663 N.E.2d 1319.
[13] Mumaw, supra, at 11, 119 N.E. 132.
[14] Troha, supra, at 334, 663 N.E.2d 1319.
[15] Roark v. Belvedere, Ltd. (June 12, 1996), 1st Dist. No. C-950273, citing Dynes Corp. v. Seikel, Koly Co., Inc. (1994),100 Ohio App.3d 620, 654 N.E.2d 991, and Suter v. The Farmers FertilizerCo. (1919), 100 Ohio St. 403, 126 N.E. 304 (emphasis added).
[16] See R.C. 5301.251.