NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0203n.06

Case No. 15-4061

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 13, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| NIKKI FILICKY, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| AMERICAN ENERGY – UTICA, LLC, | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |

**O P I N I O N**

BEFORE: KEITH, McKEAGUE, and KETHLEDGE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Plaintiff Nikki Filicky's property was subject to an oil and gas lease with Defendant American Energy – Utica, LLC. Shortly before Filicky's lease expired, American spudded a well on land purportedly pooled with Filicky's. American believed these drilling operations extended Filicky's lease beyond its primary term. However, because American failed to comply with the lease's recording requirements, Filicky's land was not pooled with land on which American commenced drilling operations. As a result, Filicky's lease expired at the end of its primary term. Accordingly, we AFFIRM the district court's grant of summary judgment to Filicky.

**I**

Plaintiff Nikki Filicky owns 168.24 acres of property in Belmont County, Ohio. On September 26, 2006, Filicky entered into a five-year oil and gas lease with Solid Rock Energy, Inc. Solid Rock then assigned the lease to Marquette Exploration. On May 21, 2010, Filicky signed an amendment with Marquette that altered substantive portions of the lease and increased the lease's primary term to eight years with a new expiration date of September 26, 2014. As amended, the lease contained certain "savings clauses" that extended the lease into a secondary term if (1) "oil or gas or either of them [was being] produced" from Filicky's property or from lands pooled with her property as of September 26, 2014,[1] or (2) the energy-company lessee was "engaged in drilling or reworking operations" on Filicky's land or on land pooled with Filicky's as of September 26, 2014. The amended lease contained a "Pooling Clause" which outlined a formal recording procedure to "pool" Filicky's land into a distinct unit:

> 6. Lessee hereby is given the right at its option, at any time within the primary term hereof or at any time which this lease may be extended by any provision hereof, and from time to time within such period, to pool, reform, enlarge and/or reduce such unit or pool. . . . Each unit or reformation thereof may be created by governmental authority or by Lessee recording in the county recorder's office a Declaration containing a description of the pooled acreage. Any well which is commenced, or is drilled, or is producing on any part of any land theretofore or thereafter so pooled shall, except for payment of royalties, be considered a well commenced, drilled, and producing on leased premises under this lease[.]

Thus, Filicky's land could be pooled only by governmental authority (via forced pooling), or where the lessee recorded a "Declaration containing a description of the pooled acreage" in the Belmont County Recorder's Office.

---

[1] "Pooling" and "unitization" are terms of art in the oil and gas industry. Pooling "refers to the aggregation of two or more tracts of land into a drilling unit of prescribed size." *Henry v. Chesapeake Appalachia, L.L.C.*, 739 F.3d 909, 910 (6th Cir. 2014) (citing Williams & Meyers, Oil and Gas Law § 901) (internal quotation marks omitted). Unitization "refers to the combination of most, if not all, of the separate tracts in the field into one tract so that the reservoir may be operated without regard to surface property lines." *Id.*

In 2010, Marquette either changed its name to Hess Ohio Resources, LLC, or assigned Filicky's lease to Hess. Consistent with the Pooling Clause, Hess filed a "Declaration of Pooled Unit" (DPU) for the "Smith A Unit A" (the Smith A Unit) in the Official Records of the Belmont County Recorder, thereby pooling Filicky's land into that unit. The DPU contained a precise description of the Smith A Unit's total pooled acreage, a list of each tract included in the unit, and a description of each individual tract's acreage and percentage composition of the overall unit. [R. 10-1.] The 687.580-acre Smith A Unit contained 8.405 acres of Filicky's land. [R. 10-1, PID 201.] Hess received a permit from the State of Ohio and began drilling a well on the Smith A Unit—the Smith A 1P-12 well (Smith A well)—in either January or February of 2014. The parties agree that the Smith A well was never completed.[2] On July 3, 2014, Hess assigned its interest in the Smith A Unit and the Smith A well to Defendant American Energy – Utica, LLC (American).

On September 10, 2014, American submitted a permit application to the Ohio Department of Natural Resources (ODNR) to drill the new Eureka SMT BL H-A well (Eureka well) on the same well pad as the former Smith A well. The Eureka well's permit application and accompanying unit map failed to mention the Smith A Unit or Smith A well. The permit application instead described the Eureka well's distinct characteristics including: (1) a different name, (2) different geographic boundaries, (3) greater acreage in its corresponding drilling unit (692.298 instead of 687.580 acres), and (4) additional tracts included in its drilling unit. ODNR granted American a permit for the Eureka well on September 16, 2014. On September 25, 2014, the day before Filicky's lease was set to expire, American spudded the Eureka well. Despite the differences between the Eureka well's unit and the Smith A Unit, American did not reform the

---

[2] American has abandoned any claim that drilling or producing from the Smith A well extended Filicky's Lease. [R. 35, Dist. Ct. Opn. at 6, PID 359.]

Smith A DPU to conform to the Eureka well—a process specifically contemplated in the Pooling Clause—or file a new DPU covering the Eureka well before Filicky's lease expired. American eventually filed an amendment to the Smith A DPU (the Amended DPU) on March 31, 2015, more than six months after the expiration of the lease's primary term.

## II

Filicky brought this action in state court in Belmont County, Ohio, seeking a declaration that her lease expired on September 26, 2014. American removed the action to federal district court. The parties agree that the dispositive issue is whether Filicky's land was included in a valid pooled unit for the Eureka well. If Filicky's land was properly pooled with land on which American spudded the Eureka well, her lease would be extended because these "drilling operations" took place before the expiration of the lease. If her land was not pooled, American's drilling operations had no effect on Filicky's lease and it expired at the end of its primary term.

Before the district court, Filicky argued that no valid pooled unit existed for the Eureka well because American failed to file a declaration in the Belmont County Recorder's Office before the expiration of the lease that described the relevant pooled unit. Because her property was not part of the pooled unit corresponding to the Eureka well, her lease was not extended by the spudding or drilling operations of that well. American argued that, notwithstanding the difference in acreage between the Eureka well's unit and the Smith A Unit, the Smith A DPU satisfied the lease because it put Filicky on notice that her land was pooled in the Smith A Unit and the Smith A DPU covered the Eureka well. The district court granted Filicky's motion for summary judgment, reading the lease's Pooling Clause as unambiguous and clearly requiring American to file a declaration for the Eureka well. Because American failed to file the required

declaration for the Eureka well's unit, the court held that the lease terminated as of September 26, 2014.

American then filed a motion to set aside summary judgment, claiming that newly discovered evidence—the Amended DPU recorded on March 31, 2015—reformed the Smith A Unit so that it applied to the Eureka well.[3] Evidently, American believed the Amended DPU was newly discovered evidence because American's counsel was not aware of the document or recording until June 25, 2015. The district court denied American's "creative, albeit ridiculous" notion that the Amended DPU was newly discovered evidence because the Amended DPU was manufactured by American and was previously available. *Filicky v. Am. Energy-Utica, LLC*, No. 2:14-CV-2550, 2015 WL 5162502, at \*2 (S.D. Ohio Sept. 3, 2015). The court further explained that even if the March 31, 2015 Amended DPU was newly discovered evidence, there was "no lease provision either in the original or amended lease that gives [American] the unbridled right to create or reform a pooled unit *after* the expiration of the lease." *Id.* at \*3. Permitting American to amend the lease after it expired, the court explained, would "transform the lease involved here into one capable of potential revival and continuation for perhaps years after an expiration at [American's] whim, which would transform the purported expiration date of the lease into an illusion . . . [and] run afoul of Ohio's policy of disfavoring no-term or perpetual oil and gas leases." *Id.* at \*4. American timely appealed.

**III**

We review a district court's grant of summary judgment *de novo*, construing the evidence and drawing all reasonable inferences in favor of the nonmoving party. *Textileather Corp. v. GenCorp Inc.*, 697 F.3d 378, 381 (6th Cir. 2012). Summary judgment is appropriate if the

---

[3] American recorded the Amended DPU after summary judgment briefing closed on January 16, 2015. [R. 41, PID 514.] American never informed the district court of this filing and the court's grant of summary judgment to Filicky never contemplated the Amended DPU.

movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties do not dispute the material facts in this case; instead, they disagree on whether the district court properly interpreted the lease. "A question of contract interpretation is a question of law and is therefore subject to de novo review." *Whitesell Corp. v. Whirlpool Corp.*, 496 F. App'x 551, 554 (6th Cir. 2012); *Citizens Ins. Co. of Am. v. MidMichigan Health ConnectCare Network Plan*, 449 F.3d 688, 691 (6th Cir. 2006).

## IV

The parties agree that Ohio law governs this dispute. We have previously considered the standards of interpreting oil and gas leases under Ohio law:

> [C]ontract interpretation is a question of law for determination by the court. This court must determine the intent of the parties, which is presumed to reside in the contract's language. We must apply the plain language of the contract unless that language is ambiguous. The meaning of a contract is to be gathered from a consideration of all its parts, and no provision is to be wholly disregarded as inconsistent with other provisions unless no other reasonable construction is possible. Leases are subject to the same rules of interpretation as other written agreements.

*Henry v. Chesapeake Appalachia, L.L.C.*, 739 F.3d 909, 912 (6th Cir. 2014) (collecting cases) (internal quotation marks and citations omitted).

American makes two arguments supporting its view that Filicky's land was properly pooled: (1) the Smith A DPU provided Filicky with notice that her land was subject to pooling; and (2) American substantially complied with the recording requirements in the lease as the additional 4.718 acres in the Eureka Unit did not "substantially alter the 'description of pooled acreage'" in the Smith A DPU—that is, the Smith A Unit was "close enough" to the Eureka's Unit to satisfy the lease's recording requirements.

*Notice*. American's appellate briefing references no case in support of its argument that "notice" somehow informs the issue of compliance with the Pooling Clause's recording requirements.[4] As we have previously stated, "it is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) (internal quotation marks omitted); *see McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). Because American fails to describe the import of "notice" or explain how it serves as a substitute for the lease's explicit recording requirement, we decline to afford this argument any weight.

*Substantial Compliance*. American explains that, under Ohio law, "[a] party does not breach a contract if it 'substantially performs' the terms of the contract, even if performance does not conform exactly to the plain language of the contract." *Baile-Bairead, LLC v. Magnum Land Servs., LLC*, 19 F. Supp. 3d 760, 767 (S.D. Ohio 2014) (citing *Burlington Res. Oil & Gas Co. v. Cox*, 729 N.E.2d 398, 402 (Ohio Ct. App. 1999)). Though this general premise may be correct, American never raised its substantial compliance argument before the district court and develops the argument for the first time on appeal. Ordinarily, we do not review arguments or issues that a party raises for the first time on appeal. *Estate of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 925 (6th Cir. 2013); *see also DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 (6th Cir. 2006).

However, even if we consider American's argument that the Smith A DPU satisfied the lease's recording requirement because its "description of pooled acreage" was similar to the unit

---

[4] In American's memorandum of law in support of its motion to set aside summary judgment, American does cite to *Board of Com'rs of Hamilton Co. v. Arena Management Holdings, LLC*, 2004 WL 102137, 2004-Ohio-247, *5 (Ohio App. 1 Dist.) for the proposition that "the primary purpose for recording documents, such as declarations of pooled units, . . . is to give actual notice that there is an encumbrance on certain real property." [R. 37-1, Motion to Set Aside Judgment at 4, PID 370.] But the applicability of this case is overblown: it has no such holding, is unreported, and it is not interpreting an oil and gas lease.

acreage described in the Eureka's well application and permit, we are unpersuaded that the similarity in acreage can do the heavy lifting American requires. As the district court noted, the Eureka well's unit was "*larger than the Smith Unit Declaration*, and included *more* of Plaintiff's property than was included in the Smith Unit declaration . . . and the pooled tracts that relate to the Eureka [] well extend *well beyond* the Smith Unit." *Filicky v. Am. Energy-Utica, LLC*, No. 2:14-CV-2550, 2015 WL 4068777, at *4 (S.D. Ohio July 2, 2015). Moreover, at least two additional land tracts appear to be included in the Eureka's drilling unit. Though "close enough" may not be inextricably bound to horseshoes and hand grenades, it cannot carry the day given the lease's explicit recording requirement. The law, as well as the lease, requires more.[5]

American cannot overcome the fact that the Smith A Unit unsurprisingly corresponds to the Smith A well, much like the distinct Eureka Unit corresponds to the Eureka well. Were we to accept American's "close enough" argument and permit the company to "shift" the previously recorded Smith A Unit onto the new Eureka well, American could reform units carte blanche and, given the lease's savings clauses, extended the lease into perpetuity. This outcome is disfavored under Ohio law. *President & Trustees of Ohio Univ. v. Athens Livestock Sales*, 179 N.E.2d 382, 384 (Ohio Ct. App. 1961); *see also Phillips Expl., Inc. v. Reitz*, No. 2:11-CV-920, 2012 WL 6594915, at *5 (S.D. Ohio Dec. 18, 2012). Moreover, shifting units appears to conflict with Ohio Revised Code §§ 1509.05 and 1509.26 which, when read together, suggest that wells match up with their corresponding pooled units and pooled units match up with their corresponding wells.

Finally, permitting the previously recorded Smith A Unit to morph onto the new Eureka Unit with its distinct acreage, different boundaries, and additional pooled tracts would render the

---

[5] Moreover, Ohio recording statutes tend to emphasize the accuracy of land descriptions in formal recordings. *See e.g.*, Ohio Rev. Code § 5301.52 (in recording a preservation of interests for marketable title, notice must "[c]ontain an accurate and full description of all land" to be "effective and entitled to recording").

lease's clear proviso contemplating the reformation of units—"Each unit or *reformation* thereof may be created by . . . Lessee recording in the county recorder's office a Declaration containing a description of the pooled acreage," R. 8-2, PID 165 (emphasis added)—as superfluous. We generally seek to "avoid interpreting contracts to contain superfluous words." *TMW Enters., Inc. v. Fed. Ins. Co.*, 619 F.3d 574, 578 (6th Cir. 2010).

All of this means that a pooled unit different from the Smith A Unit was involved with the Eureka well. American never filed the requisite declaration for the Eureka's new pooled unit with the Belmont County Recorder's Office before the lease's expiration as mandated by the Pooling Clause. And American *knew* that the Smith A Unit did not match the Eureka well as early as September 10, 2014, when it filed the Eureka's permit application containing its acreage with the ODNR. As Ohio law instructs, "[w]e must apply the plain language of the contract unless that language is ambiguous." *Textileather*, 697 F.3d at 382. Accordingly, Filicky's property was never pooled in a unit corresponding to the Eureka well, and American's drilling operations with respect to that well—the spudding on September 25, 2014—did not extend Filicky's lease beyond the primary term. Thus, Filicky's lease expired on September 26, 2014.

**V**

American also contends that the district court erred in denying its motion to set aside summary judgment. American grounds this purported error in the district court's refusal to consider the Amended DPU that "reformed" the Smith A DPU to mirror the Eureka well's acreage as "newly discovered" evidence warranting relief under Federal Rule of Civil Procedure 59(e).[6] Although we "generally review a denial of a motion to alter or amend a judgment under Rule 59(e) for abuse of discretion, when the Rule 59(e) motion seeks review of a grant of

---

[6] We note that American's filing of the Amended DPU, "an attempt to specifically clarify the acreage subject to the Eureka [] well," American Br. at 17, fully undermines its prior assertion that the Smith A DPU was the only recording necessary to pool Filicky's land into the Eureka unit.

summary judgment, [] we apply a de novo standard of review." *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014) (internal quotation marks and citation omitted).

The district court declined to set aside its judgment, concluding that (1) the Amended DPU was not "newly discovered evidence," (2) American had an "inexplicable lack of diligence" in finding and disclosing the document, and (3) even if the Amended DPU was new evidence, it was "so untimely filed with the county recorder that it is irrelevant to the issues presented by this case" because it was filed only *after* Filicky's lease terminated. *Filicky*, 2015 WL 5162502, at *2–4. We fully agree with the district court's analysis and find additional discussion of these issues to be duplicative and unnecessary.

## VI

Accordingly, we AFFIRM the district court's grant of summary judgment to Filicky and AFFIRM the denial of American's motion to set aside summary judgment.